Roscoe F. Hersey and others vs. Lillie L. Bennett and others.

June 22, 1881.

**Application of Payments on a Continuous Account.**— In a case of voluntary payments by the debtor, where no application is made by either party, and there is but one continuous account of several items, forming but one and not separate or distinct debts, the payments will be applied on the account according to the priority of time; that is, the first item on the debit side of the account is discharged or reduced by the first item on the credit side.

**Same—Rule not changed by Intervening Resulting Trust in favor of Creditors.**—Where a debtor has paid the consideration for a grant or conveyance made to another person, and the creditor's account is made up of several items, the earlier ones dating prior and the later ones subsequent to such grant or conveyance, the fact that a trust would result in favor of the creditor in the premises conveyed for the satisfaction of the earlier items of the account, which would not result in his favor for the satisfaction of the later items, does not create a controlling equity that will take the case out of the above rule.

Appeal by plaintiffs from a judgment rendered by the district court for Nobles county, *Dickinson*, J., presiding.

*Daniel Rohrer* and *M. J. Severance*, for appellants.

The property was held by Lillie L. Bennett, as trustee for the plaintiffs, and it was security for their debts. In case of a running account, the law will apply the payments so as to secure the whole debt. *Lash* v. *Edgerton*, 13 Minn. 210; 2 Daniel on Negotiable Instruments, 269; *Schuelenberg* v. *Martin*, 2 Fed. Rep. 747; Munger on Application of Payments, 49–50, 54–55; *Gaston* v. *Barney*, 11 Ohio St. 506.

*Emory Clark*, for respondents.

MITCHELL, J. The plaintiffs are judgment creditors of the defendant W. R. Bennett. As such, they bring this action to reach, for the purpose of satisfying their judgment, lots 11 and 12, in block 6, in the village of Worthington, the legal title to which is in the defendant Lillie L. Bennett, wife of her co-defendant, and to have a trust declared in their favor in this property to the amount necessary to satisfy their judgment, pursuant to the provisions of Gen. St. 1878, c. 43, §§ 7, 8, which are as follows: "Section 7. When a grant for a valuable consideration is made to one person, and the consideration therefor is paid by another, no use or trust shall result in favor of the person by whom such payment is made, but the title shall vest in the person named as alienee in such conveyance, subject only to the provisions of the next section.

"Section 8. Every such conveyance shall be presumed fraudulent as against the creditors, *at that time,* of the person paying the consideration; and when a fraudulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their just demands."

The facts as found by the court below, so far as material to the decision of the case, are substantially these: In July, 1875, plaintiffs commenced to sell and deliver lumber from time to time to Bennett & Stone, a firm composed of defendant W. R. Bennett and one Daniel Stone, the amounts being charged as delivered to their account. Bennett & Stone made payments from time to time, which plaintiffs credited generally on account, neither party making any application to any specific items. In June, 1877, Stone retired from the firm, and the business was continued by Bennett alone, and the balance then ascertained due from Bennett & Stone was charged to Bennett individually. The dealings between plaintiffs and Bennett continued to be conducted precisely as with Bennett & Stone until March, 1878, when Bennett, with consent of plaintiffs, entered into partnership with one Grissell, and the general balance on account then ascertained due from Bennett, by consent of parties, was charged by plaintiffs to the account of Bennett & Grissell. Business was thereafter continued and conducted between plaintiffs and Bennett & Gris-

sell precisely as before; each item of lumber sold by plaintiffs being charged on the general account, and all payments made by Bennett & Grissell being made and credited on general account. In July, 1878, the account was settled between the parties, and the promissory notes of Bennett & Grissell taken by plaintiffs for the general balance then ascertained, amounting to some $12,000. These notes were all paid except one note for $4,000, for which a new note of Bennett & Grissell was taken in October, 1878, which last note is the foundation of the judgment for the satisfaction of which the property referred to is sought to be reached.

It clearly appears, and is in substance so found, that the entire dealings between plaintiffs and W. R. Bennett, and the firms of which he was a member, constituted but one continuous account, and were so treated by the parties, and that all of the payments made during this time were made and received on general account, and not appropriated by either party upon any specific items of that account. The lots above described were purchased by the defendant W. R. Bennett, who paid the consideration entirely out of his own funds, but caused the conveyances thereof to be made to his wife, Lillie L. Bennett. Lot 11 was so purchased and conveyed January 8, 1876, and lot 12, May 1, 1876. Between the dates of these conveyances and the month of August, 1876, W. R. Bennett made improvements on these lots to the amount of some $2,500, and paid therefor wholly out of his own means. No facts were found or proved that would render these conveyances fraudulent as against *subsequent* creditors of Bennett. The aggregate amount of payments made on the account exceeds the entire aggregate of the items on the debit side of the account up to May 1, 1876, the date of the last conveyance to Lillie L. Bennett, and, including the amounts paid by Bennett & Grissell, exceeds (if that be material) the aggregate of the debit side of the account up to August, 1876, when the improvements on the premises by Bennett were completed.

To maintain this action, and entitle them to the relief sought, plaintiffs must establish the fact that their claim, which is the foundation of their judgment, was an existing claim at the date of one or both of the conveyances to defendant Lillie L. Bennett. From the facts

stated, it will be apparent that the determination of that fact will depend upon the order in which the law will apply the payments upon this account. Will it apply them as defendants claim, in the order of time,—that is, to the extinguishment of the earlier items first? or should they be appropriated, as plaintiffs insist, to the later items first, and thus preserve their standing as existing creditors at the date of the conveyances?

The general rule governing the appropriation of payments where the parties have not made it, is "that the court will direct it according to the justice and equity of the case." In this form it is rather the enunciation of a principle than of a rule for practical application. In attempting to state the rule, courts have often used general and vague expressions; as, for example: "The application becomes the duty of the court, and in its performance a sound discretion is to be exercised;" or, "the law will apply payments according to its notions of justice;" or, again, "on equitable principles," and "so as to effectuate justice," and "according to the intrinsic justice and equity of the case." If these expressions are to be accepted as criterions for judicial action, the rule would become, as well remarked by one, as varying and uncertain as the famous "chancellor's foot" rule. Such a state of law would be opposed to all correct notions of judicial action. It is true that, where the parties have not made any specific application of payments, courts will make it according to the justice and equity of the case; but in doing so they are governed by certain general and established rules, and are not at liberty to adopt their own notions of what may be just and equitable in each particular case. *Miller* v. *Miller*, 23 Me. 22; *Bobe* v. *Stickney*, 36 Ala. 482. And one of these rules is: "In case of payments, where no appropriation is made by either party, *and there is but one continuous account of several items*, the payments will be applied on the account according to the priority of time; that is, *the first item on the debit side is discharged or reduced by the first item on the credit side.*"

This rule was settled in the leading case of *Devaynes* v. *Noble*, 1 Mer. 572, commonly known as *Clayton's Case*, and has since been followed by every court in England and America which has had occasion to consider the question. This was a case of a bank account, where all

sums paid in formed one blended fund, the different items of which had no longer any distinct existence. In deciding the case, the master of the rolls says (p. 608): "In such a case, there is no room for any other appropriation than that which arises from the order in which the receipts and payments take place and are carried into the account. Presumably, it is the sum first paid in that is first drawn out. It is the first item on the debit side of the account that is discharged, or reduced, by the first item on the credit side. The appropriation is made by the very act of setting the two items against each other. Upon that principle all accounts current are settled, and particularly cash accounts. Where there has been a continuation of dealings, in what way can it be ascertained whether the specific balance due on a given day has, or has not, been discharged, but by examining whether payments to the amount of that balance appear by the account to have been made? *You are not to take the account backwards, and strike the balance at the head instead of the foot of it.*"

In *Bodenham* v. *Purchas*, 2 B. & Ald. 39, a court of law followed the rule laid down by the master of rolls in the *Clayton Case*. In *Field* v. *Carr*, 5 Bing. 13, it was said that the rule laid down in the *Clayton Case* had received the sanction of every court in Westminster Hall. The same rule was followed in *Pemberton* v. *Oakes*, 4 Russ. 154. The same rule has been extensively adopted by the courts of this country, both directly and by way of analogy. When frequent settlements of accounts, with debit and credit, are made between the parties, and balances carried forward to new accounts, and no appropriation has been expressly made by the parties, (precisely this case,) the law will appropriate the credits to the extinguishment of the oldest charges. *McKenzie* v. *Nevius*, 22 Me. 138. This rule will be applied without reference to the fact that one item is better secured than another, where, as in this case, the different items have been blended together in one common account, and have no longer any separate existence, and the general balance only is considered due. *Harrison* v. *Johnston*, 27 Ala. 445; *Truscott* v. *King*, 6 N. Y. 147. In this last case, it is said that it satisfactorily appeared that the parties had manifested an intention of making such an application. But the court also says that there was no direct evidence of such inten-

tion; but the manner of keeping the accounts between the parties, and ascertaining the balance due from time to time, indicated the intention,—precisely what appears in the present case. See, also, *Crompton* v. *Pratt*, 105 Mass. 255; *Hill* v. *Robbins*, 22 Mich. 475; *Miller* v. *Miller*, 23 Me. 22; *Cushing* v. *Wyman*, 44 Me. 121; *United States* v. *Kirkpatrick*, 9 Wheat. 720. The only exception or modification of this rule is that, being founded on the presumed intention of the parties, it will not be applied where the evidence clearly shows a different intention, as in *Dulles* v. *De Forest*, 19 Conn. 190. Cases where the older items were barred by the statute of limitations, as in *Livermore* v. *Rand*, 26 N. H. 85, or are illegal, as in *Solomon* v. *Dreschler*, 4 Minn. 197, (278,) are apparently, but not really, exceptions to the rule. For a fuller citation of authorities on this subject see Munger on Payments, 102 *et seq.;* also notes on the *Clayton Case*, 1 Tudor's Lead. Cas. 1; *Field* v. *Holland*, 1 Am. Lead. Cas. 271.

The plaintiffs insist, however, that a different rule obtains where the earlier items are secured, and the later ones unsecured, or where, as in the present case, a creditor would have recourse to a certain fund or to certain property for the satisfaction of the earlier items, which he could not reach for the satisfaction of the later items, that, in such cases, the law will, for the benefit of the creditor, apply the payments upon the later items. In the case of separate and independent debts, such a rule will be applied in favor of creditors having a controlling equity; but we find no well-considered case in which such a rule was applied to an open current account, the items of which do not form distinct debts, but are blended together in one account, so that only the general balance is considered due, and the payments have been made and received on general account. In the cases of *Bodenham* v. *Purchas*, *Pemberton* v. *Oakes*, *Harrison* v. *Johnston*, *Truscott* v. *King*, *Crompton* v. *Pratt*, *Miller* v. *Miller*, and *Cushing* v. *Wyman*, cited *supra*, the creditors had security for the earlier items which they had not for the later items, or at least would have had recourse to some fund or property for the satisfaction of the earlier items which they could not reach for the later items; and yet this fact was never considered as a controlling equity which would take a case out of the general rule.

The case of *Miller* v. *Miller, supra,* is not only analogous in principle, but is also almost identical in facts, with the case at bar. In that case the supreme court of Maine held that it could not depart from the general rule, even to enable a creditor to contest a conveyance alleged to be fraudulent as to creditors, but must apply the payment in extinguishment of the oldest items instead of the most recent. The cases cited by plaintiff from this court do not sustain his position. *Solomon* v. *Dreschler,* 4 Minn. 197, (278,) simply holds that where part of the items are illegal, the payment will be applied to those that are legal. *Lash* v. *Edgerton,* 13 Minn. 210, simply adheres to the well-known rule that where both principal and interest are due on the same debt, the law will apply the payment first upon the interest. The only case cited which seems to favor a contrary rule is that of *Schuelenberg* v. *Martin,* 2 Fed. Rep. 747. In that case the court seems to base its decision mainly upon that of *Field* v. *Holland,* 6 Cranch, 8. But an examination of this case will show that it was not a case of one continuous account constituting one debt, but of several distinct and separate accounts or debts. Moreover, in the case of *Schuelenberg* v. *Martin,* the payment was not a voluntary payment by the debtor, but a payment by the law, to wit, a dividend out of the assets of an estate, by an administrator, under directions of the probate court,—a distinction not alluded to by the court who decided the case. The rule of appropriation of payments first to the earlier items of an account, being founded upon the presumed intention of the parties, applies with especial force to voluntary payments. A distinction has sometimes been made between voluntary payments and payments made by law, where the presumption of intention is wanting, and the appropriation is therefore purely judicial. 1 Am. Lead. Cas. 283. But whether this distinction is well taken it is not necessary to decide.

It is also contended that the defendant Lillie L. Bennett, who is a stranger to these transactions, and claims merely under a voluntary conveyance, cannot be heard in the matter of the application of payments. It is true she has no controlling equity that will entitle her to interpose to have the payments applied to her advantage, in a manner different from that which would obtain between the debtor

and the creditor. This is all that is meant by the authorities cited to the effect that third parties, without equities, have no power of action or dictation in the premises.

Our conclusion, therefore, is that, under the facts of this case, the payments must be applied in the order of time to the satisfaction of the older items of the account first. This would extinguish all the items of plaintiffs' account in existence at the dates of either or both of the conveyances of these premises to Lillie L. Bennett, and leave them in the position simply of creditors whose claim accrued subsequently to these conveyances. Therefore, they are not in position to ask that a trust be declared in their favor in these premises. This being decisive of the case, it does not become necessary to consider any of the other questions discussed by counsel.

Judgment affirmed..