# GENERAL ELECTRIC COMPANY v. ANCHOR CASUALTY COMPANY.

87 N. W. (2d) 639.

January 17, 1958—Nos. 37,210, 37,211.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II, David W. Nord, William D. Flaskamp,* and *Lawrence L. Lenertz,* for appellant.

*Doherty, Rumble & Butler* and *Harold Jordan,* for respondent.

MAGNEY, COMMISSIONER.

This is an appeal by defendant from an order granting summary judgment and from the judgment entered thereon. As the order is not appealable, the judgment alone is here for review.

Tieso & Kostka Electric Company, Inc., was awarded the electrical contracts on two school construction jobs, Anoka High School and Mounds View High School. Defendant, Anchor Casualty Company, issued a performance bond on each job. Plaintiff, General Electric Company, furnished electrical materials used in the performance of the contracts and brought this action against the surety to recover $58,994.18, the claimed balance due and owing it for materials so furnished. Depositions were taken. Records of the accounts between plaintiff and its debtor were before the court. Upon motion by plaintiff, the court granted summary judgment against defendant. Tieso & Kostka Electric Company, Inc., became Bond Electric Company in January 1954. The basis of this litigation arises out of the method of accounting used by plaintiff in the handling of the accounts between it and Tieso & Kostka Electric Company, Inc., during 1953 and between it and Bond Electric Company during the early part of 1954.

During the calendar year 1953 and for some time prior thereto, the accounts between plaintiff and Tieso, with few exceptions, were carried on plaintiff's books in one general account, or running account, upon which were entered charges for materials furnished by plaintiff to Tieso on its many different jobs, credits for returned mer-

chandise, and cash credits. At the end of each calendar month, plaintiff sent Tieso a copy of the general account showing the general balance at the beginning of the month and at the end of the month and the charges and credits entered during the month. The first date of delivery of materials on the two school jobs here involved was March 17, 1953. On that day the balance owing on the general account was $16,015.96. Between March 17, 1953, and December 31, 1953, the materials delivered to the Mounds View job amounted to $52,-714.65 and to the Anoka job $8,330.44. After December 31, 1953, additional materials were delivered to the Mounds View job up to March 1955 and to the Anoka job up to February 21, 1955.

Tieso made the following payments after March 17, 1953: $25,000 dated June 19, 1953; $4,500 dated August 31, 1953; $25,000 dated September 23, 1953; $25,000 dated October 12, 1953; $10,000 dated November 30, 1953; and $15,000 dated December 16, 1953. The remittance on each of the above payments bore the following notation: "to apply on account" or "on account." The main question in this case centers on the application by plaintiff of the above payments.

Under date of January 19, 1954, plaintiff sent Tieso a letter, which was received, in which it listed 12 specific job accounts totaling $144,-031.53 as the "balances owing our company" on December 31, 1953. Then the letter continued:

"We have applied your payment of June 25, 1953, $25,000.00 as follows:

| | |
|---|---|
| "Penker Contract | $12,331.24 |
| "Open Account | 12,668.76 |
| "Total | $25,000.00 |

"The following payments have been applied to your open account, which account includes all bills and credits not listed on the aforementioned job accounts:

| | |
|---|---|
| "9-1-53 | $ 4,500.00 |
| "9-24-53 | 25,000.00 |
| "10-13-53 | 25,000.00 |
| "12-1-53 | 10,000.00 |
| "12-18-53 | 15,000.00" |

The Tieso company acknowledged the correctness of the amount of indebtedness by signing a statement as follows: "The above balance of $144,031.53 was correct at December 31, 1953."

The 12 listed specific job accounts mentioned in the letter included Mounds View and Anoka. What plaintiff did was to select from the total charges made during 1953, aggregating about $248,000, specific items in the general account to which the payments of $104,500 were applied, and the remaining charges of $144,031.53 comprised the 12 job accounts listed as unpaid accounts. The payments which had been entered on plaintiff's books as general credits on the running or open account from June 25, 1953, to December 31, 1953, were thus subsequently, in January 1954, applied to specific charges and the debtor notified of this application in the letter of January 19, 1954. It was the intention of plaintiff to "separate those shipments which were secured by bonded jobs from those that weren't." After January 19, 1954, payments by Tieso, or Bond as it was then known, usually contained designations for application to specific job accounts and were applied by plaintiff to such accounts, and, in cases where payments were applied to the open account, debtor specifically so designated. Each of the 12 job accounts listed as unpaid in the letter of January 19, 1954, except Mounds View and Anoka, were paid in full during 1954 by payments designated by the debtor. After January 1, 1954, Mounds View and Anoka, which up to that time had been carried in the general account, were carried by plaintiff as separate job accounts. The unpaid balance on the Mounds View job on March 31, 1955, was $34,426.02. The unpaid balance on the Anoka job on February 21, 1955, was $24,568.16. The trial court ordered judgment for $58,994.18, the total of the unpaid balances of these two accounts.

Defendant contends that the court erred in granting summary judgment. The chief basis for this contention is its claim that, when a debtor makes payments on a running account without directing application of payment and the creditor accepts these payments without seasonably making application, the attempt by the creditor to subsequently apply these payments to specific charges was ineffective. It is the position of plaintiff that, the debtor having made payments on a running account with written instructions that they be "applied on ac-

count," the creditor was free to apply them to specific charges of its own selection and that objections which might afterwards be made by the debtor are immaterial.

■ The general rule in the law of application of payments is that a debtor has the right to direct upon which part of an indebtedness any specific payment is to be made. If the creditor accepts payment when the debtor has exercised this right, he is bound to conform to the direction. If the debtor makes no such direction, the creditor may, within a reasonable time, apply it as best suits his interest. Restatement, Contracts, § 387; A. Y. McDonald Mfg. Co. v. Lima, 187 Minn. 240, 244 N. W. 804; Martin Brothers Co. v. Lanesboro Co-op. Merc. Co. 198 Minn. 321, 270 N. W. 10.

Defendant does not dispute the accuracy of the statement of the law as stated above. It does not claim that it has any right to direct application of payments made by Tieso to plaintiff, nor does it claim that any application of payments which legally may have been made are void merely because it is detrimental to it. Its position seems to be, although not specifically so expressed, that, since the payments were made and accepted as payments on a running or general account, such entering of the payments as credits on such account was an application of such payments and that plaintiff could not thereafter apply those payments to specific items in the general account.

In the early case of Hersey v. Bennett, 28 Minn. 86, 88, 9 N. W. 590, 591, Mr. Justice Mitchell said:

"It clearly appears * * * that the entire dealings * * * constituted but one continuous account, and were so treated by the parties, and that all of the payments made during this time were made and received on general account, and not appropriated by either party upon any specific items of that account."

He characterizes an open account as one in which the items do not form distinct debts but are blended together in one account so that only the general balance is considered due and the payments have been made and received on general account. He also stated (28 Minn. 89, 9 N. W. 592):

"* * * It is true that, where the parties have not made any spe-

cific application of payments, courts will make it according to the justice and equity of the case; * * *."

The rule is again stated in L. J. Mueller Furnace Co. v. Burkhart, 149 Minn. 68, 182 N. W. 909, in which a number of cases are cited; Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738; County of Lyon v. First Nat. Bank, 166 Minn. 109, 207 N. W. 138. The rule is stated in 70 C. J. S., Payment, § 59, as follows:

"It is generally held that, where there is a running account, the creditor may apply a payment thereon as he desires, in the absence of a direction by the debtor."

A payment credited on a general or running account certainly cannot be considered an *application* of such payment to any specific item.

Three cases are cited by plaintiff as authorities for its position that, when payments are made on a general account, an application of the payments later on to particular jobs is within the creditor's right. In Hollywood Wholesale Elec. Co. v. John Baskin, Inc. 121 Cal. App. (2d) 415, 263 P. (2d) 665, the action, as here, was against a bonding company for electrical materials furnished on a school construction job. Certain payments had been made on account between June 28, 1950, and November 24, 1950, and credited to the running account at the time of their receipt. On December 29, 1950, the creditor applied the payments to particular jobs. The court held that this was a valid exercise of plaintiff's right to make such application of said payments.

In F. H. McGraw & Co. v. Sherman Plastering Co. (D. Conn.) 60 F. Supp. 504, affirmed (2 Cir.) 149 F. (2d) 301, undesignated payments were entered as general credits on a running account during period from July 19, 1939, to January 9, 1940. On January 24, 1940, the creditor sent a letter to the debtor indicating application of such payments to specific accounts. The court held that in cases of running accounts, when the debtor in making a payment fails to indicate how he wishes the payment to be applied, the debtor is without power thereafter to direct the application, but the creditor may make the application as his interest shall suggest.

In People v. Vandenburg Elec. Co. 343 Mich. 87, 72 N. W. (2d)

216, undesignated payments were entered as general credits on a running account, and the creditor sent the debtor monthly statements as here. Later, the creditor made a specific application of those payments to particular accounts. The surety contended that the entry of the payments on the general account constituted an application of payments which could not be subsequently altered by the creditor without the debtor's consent. The Michigan court held otherwise.

The debtor thus has the right to direct the application of payments, when he makes them or before, but if he fails to exercise that right he is not in position thereafter to complain where the creditor applies the payments on such items as he sees fit.

■ Although the creditor in that situation has the power to make the application, the exercise of that power is subject to certain limitations. One such limitation is that, where the creditor makes an application, the debtor must be seasonably notified. The rule is stated in Restatement, Contracts, § 391, as follows:

"Where a creditor has power to make application of a payment he can exercise the power only by sending seasonable notification to the debtor, or by some manifestation to him indicating the application."

In the instant case the letter of January 19, 1954, was a manifestation or notification to the debtor of the application of payments by plaintiff to specific items in the general account, and, since it was made very shortly after the application, it must be considered seasonable. The law simply requires seasonable notification to the debtor. It does not require the debtor's approval of such application. If the debtor did not designate the application of its payments, as it could have done, and the creditor did make such application as it thought advantageous to itself and seasonably notified the debtor as to what items it had made the application, the debtor's later objections are ineffective, since the creditor has done only what it has a legal right to do.

■ There is another limitation on the power of a creditor to make application of payments. It must be done seasonably, or within a reasonable time. Defendant here makes the claim that, when plaintiff accepted the payment of $104,500 in various amounts between June

25, 1953, and December 18, 1953, and did not make application of such payments until January 1954, such application was not seasonable, that is, it was not made within a reasonable time, and the payments constituting the $104,500 should be applied as if no application had been made.

Restatement, Contracts, § 387, *comment h,* states:

"What length of time is reasonable varies according to circumstances. Generally an application after a controversy has arisen between the parties regarding the matter is not within a reasonable time."

And in 40 Am. Jur., Payment, § 118, the general rule is stated that the creditor has a reasonable time within which to make his application. The statement continues:

"* * * In applying this rule, there are wide differences between the courts. Many courts hold that a creditor cannot make the appropriation after controversy on the subject has arisen between the parties, and, a fortiori, not at the trial. The reason supporting this rule is that if a creditor is given the right to apply payments made without designation by the debtor up to the period of controversy, he has a reasonable time to exercise his privilege and fully protect his rights. To extend his period of election beyond this point might wrong the debtor and unfairly prejudice the rights of third persons. Other courts permit a wider latitude and allow a creditor to make his election at any time before action is commenced."

On January 19, 1954, no controversy had arisen between Tieso and plaintiff. The evidence shows this conclusively. They were still doing business on a large scale. Under the general rule, the application here was made within a reasonable time. In Hollywood Wholesale Elec. Co. v. John Baskin, Inc. 121 Cal. App. (2d) 415, 263 P. (2d) 665, the pertinent dates on which payments were made and the date when application was directed are practically the same as here. There, certain payments were made on account between June 28, 1950, and November 24, 1950, and credited to the running account at the time of their receipt. On December 29, 1950, the creditor applied the payments to particular jobs. And in F. H. McGraw & Co. v. Sherman Plastering Co. (D. Conn.) 60 F. Supp. 504, affirmed (2 Cir.)

149 F. (2d) 301, undesignated payments were entered as general credits on a running account during a period from July 19, 1939, to January 9, 1940. On January 24, 1940, creditor indicated to debtor that application of such payments had been made to specific accounts. The application in each case was held to have been made within a reasonable time.

If the general rule is that the creditor has a reasonable time within which to make his application of payments to specific jobs and that such reasonable time extends at least up to the time controversy on the subject has arisen between the parties, all payments made prior to the application must have been credited to some account, and the only account in sight in that situation is the general running account. It must follow that payments entered in the general running account are available for specific application within a reasonable time in the future.

■ Defendant presents another argument for setting aside the designations made by plaintiff. It claims that plaintiff practiced fraud and duress on the debtor; therefore, that it is not liable to plaintiff. In support of this contention it cites one authority, Restatement, Security, § 118, which reads:

"(1) Subject to the rule stated in Subsection (2), where the principal has been induced to assume an obligation by the fraud or duress of the creditor, the surety is not liable to the creditor.

"(2) Where the surety has undertaken his obligation with knowledge of fraud or duress by the creditor, the fraud or duress on the principal is not an available defense to the surety."

In other words, if Tieso had been induced to enter into its obligation or contract by the fraud or duress of plaintiff, defendant is not liable on its bond.

Up to this point, no one ever claimed that the contract between Tieso and plaintiff was tainted with fraud or was forced on Tieso by duress. Obviously, there is no basis for this claim. Defendant also claims that after January 19, 1954, plaintiff threatened Tieso, or Bond, as it was then called, with loss of credit, being put out of business, and lawsuits. Bond, during this period, owed plaintiff a large sum of

money and, in trying to collect, plaintiff threatened legal action, which threat, if carried out, would necessarily cripple Bond financially. If Bond failed or refused to pay what it justly owed, of course, plaintiff was within its rights in forcing collection by legal means. But whether plaintiff practiced such duress on Bond, such behavior is no defense here. Bond itself has taken no action against plaintiff to relieve itself of the effects of duress, if in fact it experienced the duress claimed by defendant. 17A Am. Jur., Duress and Undue Influence, § 22, states:

"As a general rule an agreement cannot be avoided because of duress imposed on a third person. * * * Sometimes the rule has been stated that to be available as a defense in an action upon a contract, duress must have been exercised upon him or her who sets it up as a defense, by him who claims the benefit of the contract, or by someone acting in his behalf or with his knowledge."

Here, defendant, a third party, is seeking to set aside transactions between Tieso and plaintiff on the ground of duress, where Tieso, the claimed injured party, has made no move to avoid them.

■ Finally, defendant claims that plaintiff did not file its suit within the statutory period. M. S. A. 574.31 provides (a) that written notice of claim must be filed in the office of the county auditor within 90 days after completion of the contract and acceptance thereof by the proper public authorities; and (b) that suit must be commenced upon such claim within one year from the date of filing of such notice.

As to the Anoka job, the notice was filed with the county auditor on January 26, 1955. The performance of the contract was accepted by the school authorities on April 19, 1955. Suit was commenced on January 11, 1956.

As to the Mounds View job, the notice was filed with the county auditor on January 28, 1955. Performance of the contract was accepted by the school authorities on October 12, 1955. Suit was commenced on January 11, 1956.

A prior notice had been filed on the Mounds View job on February 2, 1954, and on the Anoka job on April 12, 1954. No suit was brought within a year after these notices had been filed. Defendant now contends that the failure of plaintiff to commence an

action within the year relieves defendant of any liability for the amounts specified in the plaintiff's 1954 notices. The statute gives a right of action on the bond if the notice is filed on time and the action is commenced within one year thereafter. The fact that the first notices became outlawed is immaterial if the second notices were filed on time and the actions brought within one year thereafter. Both conditions were complied with. The statute says nothing about a right of action being barred by the filing of earlier notices which have become outlawed.

Defendant's position is that the judgment must be reversed because there are several issues of very material facts to be submitted to a jury. An analysis of its specifications discloses to us no genuine issue of a material fact for jury determination. On the record before us, plaintiff was entitled to a summary judgment.

Judgment affirmed.