**WESTERN INSULATION SERVICES, INC., Respondent,**

v.

**CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, Appellant.**

**No. C0–90–162.**

Court of Appeals of Minnesota.

Sept. 18, 1990.

Scott J. Otero–Strouts, Minneapolis, for appellant.

Joan M. Quade, Minneapolis, for respondent.

Considered and decided by WOZNIAK, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Central National Insurance Company of Omaha issued a payment and performance bond for a construction project to be performed by METCO, Inc. Respondent Western Insulation Services claims a sum due for its subcontract on the project. Central appeals from the trial court's decision allowing Western to selectively apply a $68,000 credit, a sum Western owed METCO, to its other, unbonded claims against METCO that arose after the bonded project. Central also challenges the sufficiency of the evidence for the trial court's finding that METCO should pay Western $205,000 on its subcontract. We reverse the trial court's decision to permit selective application of credits but affirm the determination on the amount of METCO's obligation.

## FACTS

On November 14, 1985, METCO submitted a bid as general contractor to do an asbestos removal project. The total bid was for $281,820. Western had submitted a bid of $228,655 to METCO for the reinsulation part of the project. METCO did not state Western's bid in the overall bid it submitted to the state. Rather, consistent with METCO's standard business practice, it used another bidder's low, qualified bid of $147,000.

Before METCO submitted the bid, the presidents of METCO and Western discussed the possibility of the two companies working together on the project. On November 15, 1985, METCO was awarded the general contract. Its president called Western's president and said, "We got the bid." Because METCO lacked confidence in the low bidder's ability to do the reinsulation work, it wanted to use Western as its subcontractor.

After a preconstruction meeting in January 1986, the companies' presidents met to discuss the project. The trial court found:

[METCO's president] told [Western's president] that he had a lower competitive bid for the reinsulation work and

asked [Western's president] to recalculate his figures. [Western's president] * * * reviewed his bid calculation and agreed to lower his bid for the reinsulation work to $205,000. * * * When [Western's president] advised [METCO's president] of the $205,000 figure, [METCO's president] did not object.

Western began work on the project on February 9, 1986 and worked through completion.

METCO paid Western only $87,186 of the $205,000 Western claimed it was owed. On December 22, 1987, Western began this action against Central National for payment of its claim against METCO.

After completion of the project at issue in this case, Western continued to engage in various ventures with METCO. As a result, METCO was further indebted to Western for some of those later projects and Western owed METCO $67,986 for others. On April 30, 1988, without obtaining Central's consent, Western applied the $67,986 to debts incurred by METCO which arose after the project at issue in this case but were no longer bonded.

## ISSUES

1. Did the trial court err by finding that Western's application of payments was proper?

2. Did the trial court err by finding a contract between Western and METCO for $205,000?

## ANALYSIS

■ The trial judge's findings will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01. However, a finding of fact should be set aside if induced by an error of law. *Reserve Mining Co. v. State,* 310 N.W.2d 487, 490 (Minn.1981). The trial court's conclusions of law are not binding on this court and may be reviewed de novo. *A.J. Chromy Const. Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

■ 1. Normally, if a debtor makes a payment on a general account without instructions on how to apply the payment, the payment is applied to the oldest item on account. *See Banner Grain Co. v. Burr Farmers Elevator & Supply Co.,* 162 Minn. 334, 339, 202 N.W. 740, 742 (1925). In this case, this would mean Western would give METCO a $67,986 credit on METCO's earliest debt, the bonded debt which is the primary object of these proceedings. On the other hand, if a debtor does not direct the application of payments, under some circumstances the creditor may be entitled to apply the payment as it sees fit, including application to a later item of the account. *General Electric Co. v. Anchor Casualty Co.,* 251 Minn. 305, 309, 87 N.W.2d 639, 642–43 (1958).

■ Under the principles of *General Electric,* the creditor's freedom to apply credits, if not premised on actual consent, rests on implications of consent found in payments without instructions. *See id.* at 309–11, 87 N.W.2d at 642–44. Accordingly, once a dispute has arisen between the creditor and debtor, the creditor is no longer in a position to claim assent for applying payments so as to prejudice the rights of the debtor or a third party. *Id.* at 311–13, 87 N.W.2d at 644–45.

In *General Electric,* the trial court upheld the creditor's application of payments because a dispute did not arise between the creditor and debtor until after the application was made. *Id.* at 312–13, 87 N.W.2d at 645. Here, in contrast, the controversy between METCO and Western arose prior to the application.

■ It is also evident here the debtor did not otherwise acquiesce in Western's application of the credit. Appellant Central National was the surety for the oldest debt METCO owed Western. Upon default of a bonded obligation, the surety is entitled to raise the principal's defenses to avoid liability. *Americana State Bank v. Jensen,* 353 N.W.2d 652, 655 (Minn.App.1984). It follows that after Central National was called upon to pay METCO's oldest debt, Central had the ultimate authority to consent to Western's application of the $67,-986. Western never obtained Central's

consent to apply the credit on debts other than the first one incurred.

In addition, a similar rationale governs a case, like this, where the credit being applied was not in the form of an actual payment from the debtor. Implications of the debtor's will arise from its payment without instructions. *General Electric,* 251 Minn. at 309–11, 87 N.W.2d at 642–44. No such implications arise where the credit is created by recovery of funds from a third party, or in the situation here, where the credit is an offset of the debtor's claim against the creditor. *See Dunn v. Second Nat'l Bank,* 131 Tex. 198, 209–10, 113 S.W.2d 165, 172 (Tex.Com.App.1938) (if debtor had no opportunity to direct application of the payment, the creditor's right of application does not arise). Once again in this situation, application to a later claim fails without another showing of the debtor's consent, and no consent was given here by the surety who was called upon to pay METCO's earliest debt to Western.

Western points to another facet of the law on its application of credits after a dispute. Even if the law suggests the credit here should be applied on the earliest debt, Western contends a creditor is never free to apply a credit to pay a part of its claim the debtor claims is not valid. *See Banner Grain,* 162 Minn. at 339, 202 N.W. at 742. Thus, Western contends its $67,986 debt could not be credited to the claim disputed by METCO, the asbestos removal claim. Here, however, METCO's denial of the removal claim was no obstacle to a credit of $67,986 on the item; although METCO questioned the total sum it owed Western for this project, both parties agree the balance due as of April 1988 was not less than $67,986. METCO's evidence indicated the contract was for about $170,000. As of April 1988, Western had only been paid $87,186.

Because the record demonstrates an application of credit without the debtor's instructions or consent, Western's attempt to credit a later claim was improper as a matter of law.

■ 2. The "existence of a contract is primarily a question of fact to be determined * * * on the basis of the evidence presented and the surrounding circumstances." *Malmin v. Grabner,* 282 Minn. 82, 86, 163 N.W.2d 39, 41 (1968). "A contract requires a meeting of the minds concerning its essential elements." *Minneapolis Cablesystems v. City of Minneapolis,* 299 N.W.2d 121, 122 (Minn.1980).

> The requisite mutual assent for the formation of a contract * * * does not require a subjective mutual intent to agree on the same thing in the same sense, but may be based on objective manifestations whereby one party by his words or by his conduct, or by both, leads the other party reasonably to assume that he assents to and accepts the terms of the other's offer.

*Holt v. Swenson,* 252 Minn. 510, 516, 90 N.W.2d 724, 728 (1958) (citation omitted). Mere silence ordinarily does not amount to an acceptance; however, if the relationship between the parties is such that an offeror is justified in expecting a reply or the offeree is under a duty to respond, silence will be deemed an acceptance. *See id.*

■ Here, the trial court found a contract between Western and METCO for $205,000. This finding was adequately supported by the record before us. The evidence supports the trial court's finding that METCO's president accepted Western's president's offer to do the reinsulation work for $205,000. Under the circumstances of this case, METCO's president had a duty to object and prevent Western from performing the reinsulation work if he was unwilling to pay Western $205,000. *See Holt,* 252 Minn. at 516, 90 N.W.2d at 729 (offeree accepted offer by allowing offeror to perform contract without objection); *Gryc v. Lewis,* 410 N.W.2d 888, 892 (Minn.App.1987) (duty to object to agreement to compensate neighbors for land dedicated to cul-de-sac before construction of cul-de-sac given irrevocable nature of dedication).

## DECISION

Western's application of the $67,986 in a manner prejudicial to Central National's rights without its consent was improper.

However, the trial court did not abuse its discretion by finding a contract between Western and METCO for $205,000.

Because of our disposition of this case, we do not address the issue of the reasonable value of Western's services.

Reversed in part and affirmed in part.