*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0678**

KBW Associates, Inc.,
Appellant,

vs.

W.L. Hall Co.,
Respondent.

**Filed March 30, 2015
Affirmed
Klaphake, Judge**[*]

Clay County District Court
File No. 14CV13180

Kip M. Kaler, Kaler Doeling, P.L.L.P., Fargo, North Dakota (for appellant)

Michael B. Lapicola, David A. Snieg, Faegre, Baker, Daniels, LLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Smith, Judge; and Klaphake, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KLAPHAKE**, Judge

Appellant general contractor KBW Associates, Inc. (KBW) challenges the district court's dismissal of its promissory estoppel claim against respondent subcontractor W.L.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Hall Co. (Hall). KBW argues that the district court erred by concluding that (1) KBW did not rely to its detriment on Hall's promise to complete the work on time and (2) Hall's promise need not be enforced to avoid injustice. We affirm.

## DECISION

Promissory estoppel is an equitable doctrine that "impl[ies] a contract in law where none exists in fact." *Grouse v. Grp. Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981). Promissory estoppel "requires proof that 1) a clear and definite promise was made, 2) the promisor intended to induce reliance . . . [,] [3] the promisee in fact relied to his or her detriment, and [4] the promise must be enforced to prevent injustice." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000).

In applying Minn. R. Civ. P. 52.01, "we view the record in the light most favorable to the judgment of the district court." *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999). "The decision of a district court should not be reversed merely because the appellate court views the evidence differently." *Id.* "Rather, the findings must be manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted). "Findings of fact are clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (quotation omitted). And "[i]f there is reasonable evidence to support the district court's findings, we will not disturb them." *Rogers*, 603 N.W.2d at 656. This court applies a de novo standard of review to the district court's conclusions of law. *Western Insulation Servs. v. Central Nat'l Ins. Co.*, 460 N.W.2d 355, 357 (Minn. App. 1990).

2

## I.

KBW received a subcontract bid from Hall which it incorporated into its general contractor's bid to Minnesota State Colleges and University (MNSCU). The MNSCU project at issue involves the first phase (Phase 1) of a two-phase renovation of a residence hall that was to be performed under the specifications promulgated by MNSCU. The specifications required substantial completion by August 15, 2011. Hall withdrew its bid after MNSCU awarded the general contract to KBW, stating that its bid was in error and the bid proposal was $60,000 lower than it had intended to bid. KBW thereafter found a replacement subcontractor to complete the project.

KBW first challenges the district court's conclusion that KBW did not rely to its detriment upon Hall's performance. To support this conclusion, the district court found that (1) the project was delayed because of KBW's month-long search for a replacement subcontractor, and then by the MNSCU approval process, which in turn delayed the manufacture and delivery of the materials for the project; (2) KBW made the decision to go with another subcontractor despite knowing that Hall could timely perform; and (3) it was uncertain from the evidence whether Phase 1 of the project was substantially completed by the deadline.

### *Delay due to KBW's month-long search for a contractor other than Hall*

The district court found that KBW's search for a replacement subcontractor was the reason the project was delayed. We agree. KBW was aware that it needed to find a replacement subcontractor after Hall withdrew its bid on April 25, 2011. Despite this, KBW rejected a bid it received four days later from Northland Glass and Glazing

3

Company (Northland), which advised KBW that it would need to accept the bid immediately in order to meet project deadlines. KBW instead waited until May 25 to accept Northland's bid,[1] ten days after the date the project was scheduled to commence and exactly one month after Hall withdrew its bid. KBW knew that contracting with Northland would require approval from MNSCU—a process KBW knew would take additional time and add further delay to the project start date. Thus, this finding by the district court is not clearly erroneous.

**_KBW could have contracted with Hall to avoid the delay_**

The district court also found that KBW could have contracted with Hall to avoid delaying the process. KBW testified that it knew Hall was the exclusive supplier of Wausau products and that Northland would not be able to complete the project on time when it accepted Northland's bid. KBW testified that although it discussed the withdrawal of Hall's bid with MNSCU, they both "agreed" to look for a replacement subcontractor rather than pay Hall the additional $60,000. KBW stated, and MNSCU agreed, that it believed that Hall's conduct represented poor business ethics. KBW testified that they both were "pretty disgusted with [Hall]" and paying the additional $60,000 for the corrected bid amount "would be the last thing [they'd] do." The parties do not dispute that Hall would have performed the work if KBW agreed to pay the additional $60,000.

---

[1] This was Northland's second bid. KBW rejected Northland's first bid because it was too high. The bid KBW accepted was for a lesser amount but included materials from manufactures other than Wausau—the manufacturer named in MNSCU's project specification.

KBW instead continued to look for a replacement subcontractor. There is no evidence tending to show that KBW attempted to negotiate the increased bid price with Hall. Indeed, when asked at trial whether KBW made an attempt to "persuade [Hall] to work the project," KBW testified that it only asked "why [Hall] would do this and why [Hall] would not honor [its] bid." KBW testified that it would not have offered Hall the additional $60,000 in order to complete the job. The district court's finding in this regard is not clearly erroneous.

*Failure to meet substantial completion deadline*

The district court found that it was unclear from the record that KBW failed to meet the project's August 15 substantial completion date. The project specification states, "Substantial completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use." The project specification further instructs that "[t]he Owner may occupy or use any completed or partially completed portion of the Work at any stage . . . provided such occupancy or use is consented to by the insurer as required[.] Such partial occupancy or use may commence whether or not the portion is substantially complete."

Conflicting evidence was presented on whether the project was substantially completed by August 15, 2011.[2] There was testimony that students were able to use the bathrooms, despite the fact that the installation of the curtain walls and windows was not

---

[2] While both parties allude to a Certificate of Substantial Completion to be issued by the Architect pursuant to § 9.8.4 of the project specification, there is nothing in the record to show that one was ever issued.

completed. There was also testimony that the students could use part of the lounge area while Northland continued to work. KBW provided testimony that the students could use the bathroom, but that they could not use the lounge and the kitchen area. However, it is undisputed that the windows and curtain walls were not delivered until on or around August 15—the deadline date for substantial completion. Based on this evidence, the district court did not err by finding that the record was incomplete for purposes of determining whether KBW substantially completed the project by August 15.[3]

## II.

KBW challenges the district court's conclusion that Hall's promise did not need to be enforced in order to prevent injustice. Whether a promise must be enforced to prevent injustice depends on, among other things, the reasonableness of a promisee's reliance. *Faimon v. Winona State Univ.*, 540 N.W.2d 879, 883 (Minn. App. 1995), *review denied* (Minn. Feb. 9, 1996). "The injustice factor is a question of law that the court must decide." *Id.*

The district court found that KBW "should have at least sought timely performance by Hall before it solicited an untimely performance by Northland." Because it did not, the district court determined it could not "find that KBW made reasonable efforts to avoid the consequences for which it now seeks to hold Hall liable." KBW argues that it mitigated its damages by looking for a different subcontractor, and by

---

[3] Moreover, the district court noted that even if it were to agree with KBW that the project was not substantially completed on August 15, 2011, "the [c]ourt [could] make no finding as to whether that was the case because the window and curtain wall work was incomplete, or for other reasons."

6

getting MNSCU to reimburse it for Northland's additional costs.  We are not persuaded.

KBW chose to look for a replacement contractor instead of using Hall despite knowing

that it would not be able to timely meet the project deadline.  KBW did not make

reasonable attempts to work with Hall after discovering that Hall withdrew its bid.  Nor

did KBW make a reasonable attempt to persuade MNSCU to pay Hall the difference.

KBW's decision to find another subcontractor was grounded in its disagreement with

Hall's business ethics.  In fact, KBW was able to obtain reimbursement from MNSCU in

the amount of $84,481 to pay for Northland's contract—an amount greater than the

additional $60,000 requested by Hall.  KBW did not make reasonable efforts to mitigate

its damages for not meeting the time requirements of the project; thus, any reliance that

KBW had on Hall's promise to complete the project on time was not reasonable, and the

district court did not err in so finding.

**Affirmed.**