*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0426**

Tenisha Williams,
Appellant,

vs.

Halimatou Diallo,
Respondent.

**Filed January 29, 2024**
**Affirmed**
**Smith, Tracy M., Judge**

Hennepin County District Court
File No. 27-CV-21-14446

Tenisha Williams, Brooklyn Park, Minnesota (pro se appellant)

Philip Sieff, Robins Kaplan, Minneapolis, Minnesota (for respondent)

Considered and decided by Gaïtas, Presiding Judge; Smith, Tracy M., Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

Following a court trial after removal from conciliation court, appellant former tenant challenges the district court's determinations that (1) respondent landlord's written statement justifying withholding the tenant's security deposit satisfied statutory requirements and (2) the landlord was not precluded from collecting rent although the

landlord undisputedly lacked a required municipal rental license for the dwelling. We affirm.

**FACTS**

This appeal arises out of appellant Tenisha Williams's action against her former landlord, respondent Halimatou Diallo, to recover Williams's security deposit and the rent that Williams had already paid and Diallo's counterclaim for unpaid rent.

In December 2019, Williams and Diallo entered into a one-year lease agreement for a townhome in Brooklyn Park. Williams lived at the townhome from November 2019 through the beginning of December 2020.

Around September 2020, Diallo told Williams that she would not renew the lease. In October 2020, Williams stopped paying rent and told Diallo that she was moving out in December.

Williams moved out in early December 2020. At the trial on the parties' competing claims, Williams agreed that she left beds and boxes in the garage. She also testified that she did not clean the townhome due to hostility during the move-out. Diallo testified that Williams caused property damage, including an unscrewed railing; caused damage to refrigerator handles, carpet, flooring, and walls; and did not return keys. Diallo provided an invoice from a cleaning company for $698.52. Williams testified that she struggled to pay rent due to loss of income as a result of the COVID-19 pandemic and that she could not receive rent assistance because Diallo did not have a rental license.

Diallo testified that she notified Williams by certified mail and email that she would not return Williams's security deposit. Diallo did not provide evidence of the certified mail

or emails, but she offered a text message from her to Williams. The text message was read into evidence by the district court judge and stated the following:

> Do you realize the deposit doesn't cover even close to cover what you owe me? You stayed for three months without paying, ransacked the house, destroyed even the new fridge I just got, painted a room without permission. So the balance you owe will be to you. Any additional legal letters will be sent to the address.

Williams does not dispute that she received this text message.

It is undisputed that Williams did not pay rent for the months of October and November and the first week of December in 2020. The tenant rental ledger listed the rent owing for that period as $4,974.80 and the security deposit amount as $2,350.

Williams initiated an action in conciliation court seeking recovery of her security deposit and the rent that she had paid to Diallo—together totaling approximately $15,000. Diallo filed a counterclaim against Williams seeking judgment of $14,875 for the last months' unpaid rent and rental property damage. After a contested hearing, the conciliation court issued an order finding that Diallo was entitled to judgment against Williams for $5,694.80.

Williams appealed the conciliation court's ruling to the district court. The conciliation court's judgment was vacated, and the matter proceeded to a bench trial.

Following the trial, the district court ruled in favor of Diallo. First, the district court determined that Williams was not entitled to recover her security deposit because the text message that Diallo sent to Williams satisfied the requirement of a "written statement" under Minnesota Statutes section 504B.178 (2022) when retaining a security deposit and

3

the evidence at trial demonstrated that Williams caused property damage that offset the security deposit. Second, the district court concluded that Williams was not entitled to recover paid rent and that Williams owed Diallo $4,974.80[1] for unpaid rent because Diallo's failure to obtain a rental license did not preclude Diallo from collecting rent.

Williams appeals.[2]

## DECISION

**I.    The district court did not err when it determined that Williams was not entitled to recover her security deposit.**

Williams challenges the district court's determination that Diallo's text message notifying Williams that Diallo was withholding Williams's security deposit was sufficient under Minnesota Statutes section 504B.178, subdivision 3. Williams contends that the written statement required by that provision must be sent via the United States mail and, because the text message was not, she is entitled to the return of her security deposit and interest as provided in Minnesota Statutes section 504B.178, subdivision 4.

Minnesota law provides that, "within three weeks after termination of the tenancy" and "after receipt of the tenant's mailing address or delivery instructions," a landlord must either return a security deposit paid by the tenant or "furnish to the tenant a written statement showing the specific reason for the withholding of the deposit." Minn. Stat. § 504B.178, subd. 3(a). A landlord may withhold a security deposit "(1) to remedy tenant

---

[1] The district court also ordered Williams to pay $50 in costs, so the total judgment against Williams was $5,024.80.

[2] Williams is self-represented in this appeal. Diallo did not file a responsive brief, and we therefore determine the case on the merits. *See* Minn. R. Civ. App. P. 142.03.

4

defaults in the payment of rent" or "(2) to restore the premises to their condition at the commencement of the tenancy" excluding "ordinary wear and tear." *Id.*, subd. 3(b). If a landlord fails to provide a timely written statement, the landlord is "liable to the tenant for damages in an amount equal to the portion of the deposit withheld by the landlord and interest." *Id.*, subd. 4.

A. **Diallo's text message was sufficient under Minnesota Statutes section 504B.178.**

Whether a text message may constitute a "written statement" for the purposes of Minnesota Statutes section 504B.178, subdivision 3, is a matter of statutory interpretation. "The interpretation of a statute is a question of law that [appellate courts] review de novo." *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016).

The goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2022). "When a word or phrase has a plain meaning, [appellate courts] presume that the plain meaning is consistent with legislative intent and engage in no further statutory construction." *Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016). Words and phrases are construed according to their plain and ordinary meaning. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001).

To support her contention that the written statement must be delivered by U.S. mail, Williams relies on Minnesota Statutes section 504B.178, subdivision 3(b), which provides:

> It shall be sufficient compliance with the time requirement of this subdivision if the . . . written statement required by this subdivision is placed in the United States mail as first class mail, postage prepaid, in an envelope with a proper return address, correctly addressed according to the mailing address

5

> or delivery instructions furnished by the tenant, within the time required by this subdivision.

Williams argues that, because subdivision 3(b) explicitly references "the United States mail," the statute requires the written statement to be sent by U.S. mail. The argument is unpersuasive.

As is plain from the start of subdivision 3(b), the provision addresses "compliance with the time requirement" of subdivision 3. The time requirement, as explained above, is "within three weeks after termination of the tenancy" and "after receipt of the tenant's mailing address or delivery instructions." Minn. Stat. § 504B.178, subd. 3(a). Subdivision 3(b) provides that it is "sufficient compliance" with the time requirement if a properly prepared mailed statement is deposited in the U.S. mail within that time period. Subdivision 3(b) does not state that a written statement complies with the statute only if it is sent by U.S. mail. The rules of statutory construction prohibit appellate courts from "adding words or meaning to a statute that were intentionally or inadvertently left out." *Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn. 2001). Accordingly, we decline to interpret subdivision 3(b) as requiring that a written statement provided pursuant to section 504B.178 be sent via U.S. mail.

Further, two other subdivisions of the statute—subdivision 3(a) and subdivision 4—support the interpretation that the "written statement" need not be sent via U.S. mail. *See State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) (explaining that statutory language must not be read in isolation but rather "all provisions in the statute must be read and interpreted as whole"). Subdivision 3(a) provides that the landlord must "furnish" a written

statement to the tenant that provides the reasons for withholding the security deposit. "Furnish" is not defined by statute. *See* Minn. Stat. § 504B.001 (2022) (defining terms for purposes of Minnesota Statutes chapter 504B). When a term is not defined by statute, courts may look to dictionary definitions to ascertain the common and ordinary meaning of the term. *State v. Thonesavanh*, 904 N.W.2d 432, 436 (Minn. 2017). One definition of "furnish" is "[t]o provide." *The American Heritage Dictionary of the English Language* 712 (5th ed. 2018). Thus, the plain meaning of subdivision 3(a) is that the landlord must "provide" the written statement. While "providing" the written statement may be accomplished via U.S. mail, the plain language of subdivision 3(a) does not require the written statement to be sent via the mail.

Additionally, subdivision 4, the penalty provision, states that "any landlord who fails to . . . provide a written statement within three weeks of termination of the tenancy . . . after receipt of the tenant's mailing address or delivery instructions, as required in subdivision 3, is liable to the tenant for damages." Like subdivision 3, this provision does not explicitly state that the written statement must be delivered via U.S. mail. And, similar to subdivision 3(a), this provision uses the word "provide," a synonym for the word "furnish," rather than a more specific description of how the written statement must be delivered to the tenant. The plain meaning of the statute therefore does not require the written statement to be sent via the U.S. mail.

With this understanding of the statute, Diallo's text message was a "written statement" that Diallo "furnished" or "provided" to Williams. Williams does not dispute that she received the text message, nor does she argue that it was delivered outside of the

7

three-week deadline. Williams also does not claim that the reasons that Diallo gave for withholding the security deposit—to recover unpaid rent and to restore damaged property—are not statutorily permitted reasons. Williams's challenge to the district court's determination that Diallo's written statement was sufficient under section 504B.178 therefore fails.

### B. Diallo was justified in withholding Williams's security deposit.

Although Williams does not provide much explanation, she suggests that the district court made erroneous factual findings in determining that Diallo was justified in withholding Williams's security deposit. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. A finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted).

Here, the district court determined that the property damage, cleaning costs, and missing keys offset Williams's security deposit. The record supports the district court's findings. Diallo testified regarding damage to the townhome's walls, stair railing, floors, and refrigerator; costs to hire a cleaning company; and keys not being returned. The district court found Diallo's testimony credible. We discern no clear error in the district court's factual findings regarding the basis for Diallo to withhold the security deposit.

**II.    The district court did not err when it determined that Williams was not entitled to recover paid rent and that Williams owed Diallo unpaid rent.**

Williams contends that Diallo was not entitled to collect rent because Diallo failed to obtain a rental license as required by the Brooklyn Park municipal code. She argues that the district court therefore erred in denying her claim for rent paid and in granting Diallo's claim for unpaid rent.

The district court's determination regarding whether Diallo is entitled to rent throughout the tenancy is a legal conclusion—it is undisputed that Diallo did not have a rental license throughout the tenancy and that Williams did not pay rent in the latter months of her tenancy. Appellate courts review a district court's conclusions of law de novo. *W. Insulation Servs. v. Cent. Nat'l Ins. Co. of Omaha*, 460 N.W.2d 355, 357 (Minn. App. 1990).

The Brooklyn Park rental-license ordinance provides:

> It is unlawful to operate a rental dwelling in the city without first having obtained a license from the City Manager. Each general housing unit and each apartment complex must register annually with the City Manager. No license is required under this subchapter when an owner occupies a living unit as a permanent residence. Failure to obtain a rental license may result in the issuance of administrative citations and fines and any other civil or criminal penalties available to the city.

Brooklyn Park, Minn., Code of Ordinances (BPCO) § 117.43 (2023).

Williams appears to argue that Diallo was not entitled to collect rent because violating the Brooklyn Park rental-license ordinance was a crime. However, the Brooklyn Park ordinance does not explicitly state that a violation necessarily constitutes a crime; rather, the ordinance specifically provides that a violation "may result" in the city issuing

9

"administrative citations and fines and any other civil or criminal penalties available to the city." *Id.*

As Williams notes, the Brooklyn Park rental-license ordinance cross-references section 10.99 of the Brooklyn Park code. *Id.* Section 10.99 provides in relevant part:

> Any person, firm or corporation who violates any provision of this code for which another penalty is not specifically provided, shall, upon conviction, be guilty of a misdemeanor. The penalty which may be imposed for any crime which is a misdemeanor under this code, including Minnesota Statutes specifically adopted by reference, shall be a sentence of not more than 90 days or a fine of not more than $1,000, or both.

BPCO § 10.99 (2023). But it is not clear that the reference to this general penalty provision renders every violation of the rental-license ordinance a crime. Rather, the plain language of the rental-license ordinance provides several options for how a violation may be handled, including "administrative citations" which are not criminal penalties. BPCO § 117.43. Based on the plain language of the rental-license ordinance, we do not conclude that every violation is a crime, as Williams contends.

Even if a violation of the rental-license ordinance were a crime, Williams does not cite to any precedential authority in support of her contention that violating a rental-license ordinance prevents a landlord from collecting rent. Williams relies primarily on two Hennepin County District Court decisions, which she did not append to her briefing. Decisions of the district court are not precedential. *See Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 537 n.5 (Minn. 2013) (noting "[t]hat the district court orders lack precedential value").

10

Williams also cites to a "2007" opinion by this court in which, according to Williams, we held "that a landlord could not evict a tenant for failing to pay rent if the landlord had not properly licensed the rental home." Although Williams did not provide the case name, we infer that she is referencing *Beaumia v. Eisenbraun*, No. A06-1482, 2007 WL 2472298 (Minn. App. Sept. 4, 2007). Nonprecedential opinions of this court are not binding authority. Minn. R. Civ. App. P. 136.01, subd. 1(c). Further, Williams does not explain how *Beaumia* supports her argument.

*Beaumia* addressed whether a violation of the City of Alexandria's rental-license ordinance constituted a violation of the statutory covenant "to maintain the premises in compliance with the applicable health and safety laws of the state . . . and of the local units of government." 2007 WL 2472298, at *2 (alteration in original) (citing Minn. Stat. § 504B.161, subd. 1(3) (2006)[3]). This court concluded that the landlord's violation of the Alexandria rental-license ordinance constituted a breach of the statutory covenant based on the purpose of the rental-license ordinance. *Id.* We do not find *Beaumia* persuasive here. The statutory covenant does not state that the violation of an applicable ordinance, where a violation constitutes a crime, is necessarily a violation of the statutory covenant, and *Beaumia* does not address this issue. Williams does not otherwise explain how *Beaumia* supports her argument.

---

[3] The statutory covenant is now codified in Minn. Stat. § 504B.161, subd. 1(a)(4) (2022). The quoted language is unchanged.

11

Because Williams's arguments are unpersuasive, we conclude that the district court did not err in determining that Williams was not entitled to recover rent paid and that Williams owed Diallo unpaid rent, despite Diallo's failure to obtain a rental license.

**Affirmed.**