145 N.W.2d 68 (1966)
MINNESOTA POWER & LIGHT COMPANY, Petitioner, Respondent,
v.
CARLTON COUNTY, Town of Thomson and Independent School District #99, Carlton County, Appellants.
Nos. 39878-9, 39979-80.
Supreme Court of Minnesota.
September 23, 1966.
*69 Lester R. Karjala, County Atty., Carlton, Peterson & Popovich and James E. Knutson, St. Paul, Yetka & Diesen, Cloquet, for appellants.
Sullivan, McMillan, Hanft & Hastings, and Donald D. Harries, Duluth, for respondent.

*70 OPINION
SHERAN, Justice.
Appeal from judgments[1] of the district court in two cases tried together involving property tax classification of lands in Carlton County for tax years 1962 and 1963.
Appellee, Minnesota Power and Light Company, a Minnesota corporation engaged in generating and distributing electricity, petitioned the district court under Minn.St. c. 278 to change the property tax classification on certain of its lands in Carlton County for the tax years 1962 and 1963 from class 4 (Minn.St. 273.13, subd. 9, "[a]ll property not included in the preceding classes") assessed at 40 percent of full and true value to class 3 (§ 273.13, subd. 4, "rural in character and devoted or adaptable to rural but not necessarily agricultural use," subject to certain exceptions) assessed at 331/3 percent of full and true value. The District Court of Carlton County, the Honorable Sidney E. Kaner, granted the petition and Independent School District No. 99, Thomson Township, and Carlton County appeal to this court.
The lands in question, which had been designated class 3 for many years prior to 1962, are owned by appellee and comprise 11 contiguous parcels extending in a narrow strip from the east boundary of the small community of Thomson eastward through Jay Cooke State Park to a point on the St. Louis River. The lands are used for facilities which carry water diverted from the St. Louis River eastward through a canal and conduits to surge tanks, where it is stabilized and used to drive electric generators, after which it is returned to the St. Louis River.[2] The parcels in contest all lie outside Thomson and within Jay Cooke State Park.
The parcels are composed of generally rugged and rocky forest terrain. There are presently no residences upon this land, although there were about four residences used by appellee's employees up until several years ago. There was evidence that the lands are not generally suitable for dwellings. The area is not served with municipal water, sewer, police,[3] or fire facilities. It is surrounded on all sides by Jay Cooke State Park,[4] although on the west end the lands abut the community of Thomson. The nearest town (Wrenshall) is 3 miles from the land. No streets, roads, or sidewalks serve the parcels although a state road crosses the lands at one point.
*71 The sole issue on appeal is whether the trial court's finding that the property is "rural in character and devoted or adaptable to rural but not necessarily agricultural use" has reasonable support in the evidence.
Whether a parcel of land is "rural" is a question of fact. National Bank v. Banholzer, 69 Minn. 24, 71 N.W. 919. Questions of classification under tax statutes are also questions of fact. State v. Minnesota Federal S. & L. Assn., 218 Minn. 229, 15 N.W.2d 568.[5] The trial court's findings of fact in tax cases, like those in ordinary civil actions, must be sustained upon review if reasonably supported by the evidence as a whole. Lindahl v. State, 244 Minn. 506, 70 N.W.2d 866.
Both questions raised by the statute whether the land is "rural in character" and whether it is "devoted or adaptable to rural but not necessarily agricultural use"involve interpretation of the term "rural."
Although the term "rural" is sometimes employed as co-terminous with "agricultural,"[6] it appears from the legislature's use of the phrase "rural but not necessarily agricultural use" and otherwise[7] that the legislature did not so use it. Rather, it is likely that it used the word to mean "of or pertaining to the country as distinguished from a city or town," the definition uniformly given the term by the courts.[8]
The first question presented by the statute is whether the property is rural in character. The criteria traditionally employed in answering this question have been the location and general surroundings of the property,[9] the availability to it of municipal services,[10] and its use.[11] The location and general surroundings of the land in question are undeniably rural. While the property at one end abuts a small community, it is surrounded by the rugged and rocky forest lands of Jay Cooke State Park and is 3 miles from the nearest town. The property receives the benefit of no municipal services. Appellants point out that water and sewer facilities would be impractical because of the rocky nature of the soil, and that often properties do not need all the normal municipal services. But the fact remains the properties have no municipal services. The property's use is discussed below. Taking these criteria into account, it is clear that the trial court's finding that the lands are rural in character is sustained by the evidence.
The second question is whether the property is devoted or adaptable to a rural but *72 not necessarily agricultural use. It is very arguable that the land is devoted to such a use. The use of lands for carrying water through canals and conduits to drive generators might well be deemed a use characteristic of the country as distinguished from a city or town. Such a use is clearly distinguishable from the use of property solely for residential purposes by persons engaged in city pursuits, which this court has indicated would be a nonrural use.[12] Appellants strongly emphasize the fact that the land is employed for a commercial and completely nonagricultural use. Aside from the fact that agriculture itself is a "commercial" use, appellants have shown no reason why rural uses cannot include commercial ones.[13]
But it is not necessary to determine whether the property is devoted to a rural use since, if it is rural in character, it is sufficient that it be "adaptable to rural though not necessarily agricultural use." Staples v. State, 233 Minn. 312, 315, 46 N.W.2d 651, 653.[14] In light of the character of the land, as shown by the testimony and exhibits, including many photographs which were placed in evidence, it is clear that the trial court could reasonably find the land adaptable to rural use.
Affirmed.
NOTES
[1] Appellants style their appeal as from the findings of fact, conclusions of law, order for judgment, and judgment in each case. However, Minn.St. 605.09 does not authorize appeals from findings of fact and conclusions of law, In re Settlement of Stewart, 216 Minn. 485, 13 N.W.2d 735; Wilson v. Tauer, 147 Minn. 466, 180 N.W. 93, and cases cited, or from orders for judgment, Shema v. Thorpe Bros., 238 Minn. 470, 57 N.W.2d 157, and cases cited. The other matters being nonappealable, the judgment alone is here for review. See, General Elec. Co. v. Anchor Cas. Co., 251 Minn. 305, 306, 87 N.W.2d 639, 641. The appeal from the judgment is not rendered ineffective because of reference in the notice of appeal to nonappealable matters. Salo v. Duluth & I. R. R. Co., 124 Minn. 361, 145 N.W. 114. Appellants are in no way disadvantaged by this ruling since on appeal from a judgment the court reviews whether the evidence sustains the findings of fact and whether the findings of fact sustain the conclusions of law and the judgment. See, Olson v. Mullen, 244 Minn. 31, 68 N.W.2d 640, and cases cited.
[2] Originally appellee objected also to the classification of four parcels situated in Thomson (one of which is also within Jay Cooke State Park) which parcels comprise the western portion of appellee's canal system. But prior to the trial court's decision, appellee withdrew its objection to the classification of these parcels.
[3] Of course, the property is, as is all property in a county, under the protection of the county sheriff. Minn.St. 387.03.
[4] The land for the park was conveyed as a gift to the state by a predecessor in title of the appellee, reservation being made of the lands in question.
[5] In that case it was held that whether there are "substantial differences" between Federal savings and loan associations and credit unions, so that exempting one from income tax is not unreasonable classification is a question of fact.
[6] See, e. g., National Bank v. Banholzer, 69 Minn. 24, 29, 71 N.W. 919, 920 ("rural or agricultural portion of the city"); Webster's Third New International Dictionary (1961) p. 1990 ("living in country areas: engaged in agricultural pursuits").
[7] Section 273.13, subd. 4, excepts from class-3 treatment rural property covered by subd. 2 (iron ore) and subd. 8a (property used exclusively for growing trees for timber, lumber, wood, and wood products). This indicates the legislature felt that, without the exceptions, iron ore and timber lands could be classified as rural property, which shows it intended "rural" to encompass more than just agricultural property.
[8] See, 37A Wd. & Phr. p. 683 and Supp. p. 74. See, also, Staples v. State, 233 Minn. 312, 46 N.W.2d 651, where the court held that although the land was rural in character and adaptable to rural use, it was not "agricultural lands" within the statute providing tax limitations for school maintenance purposes.
[9] See, Staples v. State, supra; In re Delinquent Real Estate Taxes, 149 Minn. 335, 183 N.W. 671.
[10] See, Staples v. State, 233 Minn. 312, 315, 46 N.W.2d 651, 653.
[11] See, Staples v. State, supra; In re Delinquent Real Estate Taxes, supra; Wagner v. Com'r of Taxation, 258 Minn. 330, 333, 104 N.W.2d 26, 28.
[12] See, Staples v. State, 233 Minn. 312, 315, 46 N.W.2d 651, 653. Appellants cite State ex rel. Western Union Tel. Co. v. Minnesota Tax Comm., 132 Minn. 93, 155 N.W. 1061, as establishing that use of property by public utility companies is necessarily nonrural. The case does not support their position. Although the ultimate result of the case was that certain telegraph company property was assessed at 40 percent of full and true value, the only question before the court was whether telegraph company property was included under the tax classification act or was outside the act because subject to a "lieu" tax. Had it been held outside the act, it would have been assessed at 100 percent of full and true value. The court's statement that (132 Minn. 99, 155 N.W. 1064) "such public service corporations as lighting, heating, and power companies, pay taxes on a basis of 40 per cent of its true and full value" was intended merely to show that to allow such companies to be assessed at 40 percent and yet cause telegraph companies to be assessed at 100 percent would be grossly unjust. The court certainly neither intimated nor held that public service company property might never be classified as rural.
[13] See, Report Attorney General, 1936, No. 353, in which it is stated: "Referring to * * * the classfication and assessment of power dams and submerged land adjacent to such dam it does not follow that because these dams and submerged lands are commercial in their use that they are not rural land, that is, unplatted land within the meaning of the statute."
[14] Some provisions of the statute do turn upon the present use of the property. See § 273.13, subd. 3, construed in Report Attorney General, 1960, No. 87.