David H. PETERSON, et al.,
Respondents,

Robert F. Fritz, Respondent,

v.

The CITY OF ELK RIVER, Appellant.

No. 81–57.

Supreme Court of Minnesota.

Nov. 13, 1981.

Larkin, Hoffman, Daly & Lindgren and Richard I. Diamond, Minneapolis, for appellant.

Robert F. Fritz, pro se.

Wakefield, Lundberg & Vie and Clifford C. Lundberg, Elk River, for Peterson, et al.

## OPINION

SIMONETT, Justice.

This is an appeal by the City of Elk River from the order and judgment of the district court adjudging the city had improperly assessed benefited property for a railroad crossing improvement. Several landowners filed notices of review claiming the trial court erred in not determining the maximum amount of benefit to their property and in disallowing certain litigation expense. We affirm.

A developer divided a 40-acre tract of township land into 28 unplatted residential lots known as the "Peterson Addition." The only access to the 40-acre tract, however, was a private driveway at the southeast corner which crossed the railroad tracks of the Burlington Northern Railroad. The railroad right-of-way formed the south boundary of Peterson Addition; the private driveway crossed the railroad tracks to reach County Road 35 on the south side of the tracks and running parallel with the railroad right-of-way.

The developer sold lots subject to the buyer obtaining a private permit from the railroad to use the one private crossing to get to and from County Road 35. This created all sorts of problems, and by 1979 the railroad gave notice it would grant no more permits and was terminating those already existing. The lot owners in Peterson Addition then petitioned the City of Elk River—which had incorporated the lands here involved within the city limits in 1977—to upgrade the street system within the subdivision and to establish a public railroad crossing to provide them with proper access to their property.

The city determined the total cost of the crossing improvement to be $71,000.95 and assessed the entire cost to benefited property. Of this amount, $57,870.95 was for the railroad crossing signals, and the balance was for the easement and construction of the grade crossing. This gives rise to one of the issues here: Could the city assess the cost of the safety signals to property owners? (The assessment for the public streets within Peterson Addition is not at issue.)

The original assessment proposal showed a benefited area of approximately 617 acres divided into three categories or levels reflecting the relative benefits obtainable from the proposed crossing. Ultimately, however, the City Council excluded the Dobel and Meyers farmsteads lying west of the Peterson Addition because this land was being actively farmed under the Minnesota Agricultural Property Tax Law, Minn.Stat. § 273.111 (1980), the "Green Acres" statute. Two 40-acre tracts lying immediately north of the Peterson Addition were included in the final assessment, one owned by Robert F. Fritz and the other by Mr. and Mrs. Charles L. Christian and another. The assessment, then, was spread as follows: $12,952.80 to the Fritz tract; $12,952.80 to the Christian tract; and $45,095.20 to the Peterson Addition (about $1,600 for each 5-acre lot).

The trial court ruled the city improperly excluded the Green Acres farmsteads; that the cost of the crossing safety signals is not assessable against specific property but is a city obligation; that, contrary to the contentions of Fritz and the Christians, their properties did receive special benefits but the amount was incorrect; and that the landowners were not entitled to recover their attorneys fees nor more than $300 expert witness fees. The trial court remanded the proceedings to the City Council to redo the assessment. These rulings present the other issues before us.

■ 1. The first issue is whether farmland covered by the Green Acres statute is subject to assessment. We hold that it is subject to assessment and affirm the trial court.

The trial court found the city excluded the Dobel and Meyers farmlands, even though within the benefited area, because they were active farms and, being under Minn.Stat. § 273.11 (1980), if assessed, there "would be no income." Nothing, however, in the statutes excludes active farmland from special assessments for local improvements. Rather, payment of any special assessment may, under subdivision 11 of the statute, be "deferred as long as such property meets the conditions" set out in the other subdivisions. Deferment is not exemption. When the land ceases to qualify for the Green Acres deferment, the city then collects the assessment. "Meanwhile," as the trial court put it, "the portion of the costs not borne by the deferred property must be borne by the municipality as a whole, and not added to the non-deferred property within the benefited area."

2. The next issue is whether the cost of the railroad crossing safety signals may be assessed. We hold they may not be.

The statute says the cost of any "improvement" may be assessed. Minn.Stat. § 429.051 (1980). An improvement is defined as "any type of improvement made under authority granted by section 429.-021." Minn.Stat. § 429.011, subd. 5 (1980). When one looks at section 429.021, containing 13 kinds of specific assessable improvements, one finds, included under subd. 1(1), projects "[t]o acquire, open, and widen any street, and to improve the same" by such things as putting in sidewalks, curbs, grading, beautification and street drainage systems. But nowhere are crossing safety signals listed. Subdivision 1(4) mentions "street lighting systems and special lighting systems"—but, again, this is not the same as safety signals. In *Sisters of St. Mary's, Inc. v. City of Beaverton*, 4 Or.App. 297, 478 P.2d 412 (1970), the Oregon court held the cost of a railroad gate crossing signal was not assessable since it was of no more benefit to the property assessed than it was to the rest of the city. The trial court below reasoned the crossing signals were a safety feature and benefited everyone in the city, whether using the crossing or not.

The city argues the public railroad crossing was put in to remedy the plight of the landlocked lot owners and so should be deemed a local improvement for their benefit and that, in any event, the landowners should be grateful the city did not elect to provide an alternative access route which would have cost twice as much as the railroad crossing. But this refrain misses the mark; the city has decided to put the access where it did and it is a public access, serving not only the city residents and taxpayers who reside there now and in the future, but also the general public that chooses to go there.

■ It is difficult, we agree, to distinguish safety signals from other assessable improvements on the grounds that the former confer only a general, not a special benefit. We think the better answer is that if the legislature had wanted to authorize safety signals as an assessable improvement, it would have said so, as it did for so many other items. We hold, therefore, that since railroad crossing safety signals are not mentioned as an authorized improvement in section 429.021, their cost may not be assessed.

3. The next issue is whether the trial court acted properly in holding that the Fritz and Christian tracts received a special benefit, albeit for lesser sums than assigned them by the city. We affirm the trial court's ruling.

Fritz and the Christians contend their presently undeveloped tracts lying north of the Peterson Addition have no need of the public railroad crossing at the south end of the Peterson Addition and, hence, they receive no benefit from it. They bolster their argument with their appraiser's testimony of no special benefit. On the other hand, the city's appraiser found the Fritz property benefited by $4,000 and the Christian property by $5,000.

■ We hold there is evidence to support the trial court's finding of special benefit. It is clear, however, this benefit is less than the $12,952.80 assessed against each tract, since the figure exceeds even the benefit

assigned by the city's appraiser. The trial court remanded the case to the City Council to recalculate the assessments. Fritz and the Christians contend the trial court should also have determined "a permissible assessment ceiling," relying on *Buettner v. City of St. Cloud*, 277 N.W.2d 199, 204 (Minn. 1979). Ordinarily this is true, but here such a determination would not be particularly helpful since the City Council will have to recalculate the entire assessment by adding in the Green Acres farmsteads and by subtracting the cost of the crossing signals. Presumably the assessments for the Fritz and Christian tracts cannot exceed the appraisal figures of the city's own assessor, but having said that, one has not said much, since the new assessment will be considerably less.

4. Finally, the landowners claim the trial court erred in denying them attorneys fees and much of their expert witness fees. The awarding of costs and disbursements is discretionary. *Edward Kraemer & Sons, Inc. v. Village of Burnsville*, 287 N.W.2d 375 (Minn.1979). So is the awarding of expert witness fees. Minn.Stat. § 357.25 (1980). We believe Judge Dablow's ruling was properly within his discretion.

Affirmed.