CITY OF SAVAGE, et al., Appellants,

v.

Ray FORMANEK, et al., Respondents.

No. C3–90–110.

Court of Appeals of Minnesota.

Aug. 21, 1990.

Review Denied Oct. 25, 1990.

Phillip R. Krass, Lachlan B. Muir, Krass & Monroe Chartered, Shakopee, for appellants.

Robert L. Schnell, Jr., Jeffrey D. Hedlund, Faegre & Benson, Minneapolis, for respondents.

Considered and decided by NORTON, P.J., and GARDEBRING and KLAPHAKE, JJ.

## OPINION

NORTON, Judge.

Appellant, City of Savage, appeals from a judgment voiding its contract with respondents, Formaneks, and excusing respondents from further performance because the agreement was unenforceable.

### FACTS

Respondents, the Formaneks, have owned land in the City of Savage since 1959. In 1980, the City of Savage (City) started planning an industrial development project (Project) that included twenty acres of land owned by the Formaneks. The Project area, along with much of the land along the Minnesota River in Savage, is under the authority of the Army Corps of Engineers. This means that any fill or development requires a permit from the

Corps. The Corps has two methods of issuing permits. One is through "discretionary authority," which means that any fill in an area must be approved by the Corps and a permit issued on a case-by-case basis. The second is through a nationwide permit system. This is a default method where the Corps has issued a blanket permit covering all areas that are not covered by discretionary authority. The Formaneks were aware of the Corps requirements because they owned land not in the Project area that was subject to the Corps' discretionary authority.

In late 1983, as part of the Project, an Environmental Assessment Worksheet (EAW) was sent to the Corps. The purpose of the EAW was to give notice to interested government agencies of the planned development of the Project and to indicate what environmental effect it would have. In January 1984, the City received notice from the Corps that the Project was authorized by the nationwide permit system. The City interpreted the Corps' January 1984 response as granting a permit for the total project; both Phase I, the installation of sewer and road improvements, and Phase II, the actual industrial development. The Corps indicated later that only Phase I was permitted.

The Formaneks were aware of the potential negative effect of Corps discretionary authority on the ability of landowners to develop their property. They made several contacts with the City engineer and representatives of the Corps to assure themselves that all permits for the Project were complete. Also, during the planning of the Project, the Corps was expanding its authority in another area of Savage, the Savage Fen, about a half-mile from the Project. This Fen area included the other Formanek property which was already under Corps' discretionary authority. The Fen area had been determined a unique wetland plant community that was in need of special environmental protection. Both the Formaneks and the City believed that the Formaneks Project property was not a wetland and therefore not in need of any protection that would require Corps' discretionary authority. The Formaneks and oth-

er City officials were assured by the City engineer in charge of the project that the expansion of discretionary authority concerning the Fen area did not affect the Project and that permitting for the Project was complete.

In order to pay for the Project, the City planned a combination of special assessments to the current landowners and tax increment financing. The tax increment financing was necessary because the cost of the improvements, approximately $3.4 million, would have made assessments prohibitive. The tax increment financing was dependent on successful development that would result in an increased tax base and thereby provide the funds for paying the debt.

To assure that the special assessments would be paid, the City and the landowners entered into assessment agreements. The agreements gave the City a lien in all assessed property. The Formaneks signed their agreement on April 24, 1984. The improvements in the Project area were started in the summer of 1984 and completed in early 1985.

On March 4, 1985, the City received notice that the Corps was taking discretionary authority of the Project. The designation of the Project within the Corps' discretionary authority has effectively halted any development. The mayor admitted that the designation has left much of the land in an unusable condition. Five private landowners in the Project area have sought permits and been rejected. The only permit that has been approved was on land owned by the state that was being purchased by the City. The City has encouraged the private landowners to stop asking for permits on an individual basis and work with the City to come up with some agreement with the Corps for development. The Formaneks have not found anyone interested in purchasing their property or developing it because of the permit requirement. The Formaneks have not sought a permit for their property because they have no development proposal to support it. The Formaneks made their first assessment

payment in 1985 of $31,362.57 but have made no further payments.

The City brought an action claiming breach of the assessment agreement and sought to foreclose on the Formaneks' property. The Formaneks counterclaimed saying that the agreement was unenforceable and that their payment of the assessment should be refunded to them with interest. The only issue litigated at trial was the enforceability of the assessment agreement. The trial court found the agreement void because both parties were mistaken as to a material fact concerning the agreement. The court also found that the Formaneks would have been excused from performance because of frustration of purpose. Because only the enforceability of the agreement was litigated, the trial court left open the possibility that the City could bring a claim for any benefit that the improvements placed on the landowners' property.

### ISSUES

1. Did the trial court err in voiding the assessment agreement based on mutual mistake?

2. Did the trial court err in excusing the Formaneks' duties under the assessment agreement?

3. Did the trial court err in denying the Formaneks' request for attorney fees?

### ANALYSIS

On appeal from a judgment, an appellate court reviews whether the evidence sustains the findings and whether the findings sustain the conclusions of law and judgment. *Minnesota Power & Light Co. v. Carlton County,* 275 Minn. 101, 102 n. 1, 145 N.W.2d 68, 70 n. 1 (1966).

*Mutual Mistake*

█ "If there is a mutual mistake concerning a material fact, parties to a contract may avoid the contract." *Winter v. Skoglund,* 404 N.W.2d 786, 793 (Minn.1987) (footnote omitted).

Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake * * *.

*Id.* (quoting Restatement (Second) of Contracts § 152(1) (1981)).

The court found that at the time the assessment agreement was signed, both parties believed 1) that the Project property did not contain wetlands, 2) that the Corps had no interest in the property and that all necessary permitting had occurred, 3) that these assumptions were basic to the agreement and 4) that neither party would have signed the agreement had they known further permitting could be required. Based on these findings, the court concluded that these mistakes were mutual, concerned a basic assumption on which the agreement was made and had a material effect on the agreed exchange of performance.

The City argues that the court's voiding the contract and declaring the agreement unenforceable is not supported by the facts and is an error of law. The court's findings of fact are reviewed under a clearly erroneous standard, Minn.R.Civ.P. 52.01; however, its conclusions of law are not binding and are decided independently. *Dahlheimer v. City of Dayton,* 441 N.W.2d 534, 536 (Minn.App.1989) (citations omitted), *pet. for rev. denied* (Minn. Aug. 15, 1989).

The first error alleged by the City is that a contract cannot be avoided based on a mistake of law. The City says that the beliefs of the parties that no further permitting could be required is a mistake of law concerning the authority of the Corps. Further, the City asserts that the evidence does not support the court's finding.

█ Whether a mistake is one of fact or law is not significant when applying the doctrine of mutual mistake. *Winter,* 404 N.W.2d at 793 n. 8. The City cannot rely simply on the fact that a mistake may be one of law. Further, the court's findings were supported by testimony from both the City administrator and Ray Formanek. Both testified that if they had known that

the Corps might require individual permits, they would not have proceeded with the Project. From this, the court could infer that because the parties went ahead with the Project, they believed at the time of contracting that it was not possible for the Corps to require further permits for this Project. *See Georgopolis v. George,* 237 Minn. 176, 182, 54 N.W.2d 137, 141 (1952) (appellate court must use all possible inferences supporting the findings). Further, both parties testified that they did not believe the property was a wetland and that they believed all permitting was completed for the entire Project. The court's findings are not clearly erroneous.

The City's second argument is that the mistake cannot relate to a future happening. "The erroneous belief must relate to the facts as they exist at the time of the making of the contract." *Creative Communications Consultants v. Gaylord,* 403 N.W.2d 654, 657 (Minn.App.1987) (quoting Restatement (Second) of Contracts § 151, comment a (1981)). Here, the parties' understanding that all necessary permits had been received and that no further permitting could be required was a mistaken belief at the time of the contract. The City argues that the mistake relates to a future happening, the later discretionary permit requirement. Although the parties learned of their mistake at a future time, the mistake was their understanding of the facts at the time of contracting.

*Frustration of Purpose*

Although performance under the agreement would be excused once the contract was void, the court went on to address the issue of frustration of purpose. Three conditions must be met for the defense of frustration of purpose to apply:

1. The party's principal purpose in making the contract is frustrated;

2. without that party's fault;

3. by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made.

*National Recruiters, Inc. v. Toro Co.,* 343 N.W.2d 704, 707 (Minn.App.1984) (citation omitted).

The purpose that is frustrated must have been a principal purpose of the party claiming discharge. The principal purpose:

[M]ust be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense.

Restatement (Second) of Contracts § 265, comment a (1981). Here, both parties understood the principal purpose of the agreement was to enable industrial development. The City was going to depend on tax increment financing to reduce the debt, and the success of the tax increment financing depended on successful development. The Formaneks would have little use for sewer and water on a parcel of land they have held for 31 years if they could not sell or develop it.

The court found that the imposition of discretionary authority by the Corps over the Project had a negative effect on development and that the actions by the Corps deterred the Formaneks from selling or developing their Project property. The court received evidence that all five private landowners who applied have been denied permits. Based on these findings, the court concluded that the Formaneks' purpose in entering the agreement had been frustrated.

The City argues that these findings fail to support sufficient frustration and that to show frustration of purpose the value of the contract must be totally or nearly totally destroyed. The City argues further that before the Formaneks can show sufficient frustration of purpose, they must have applied for and been denied a permit by the Corps.

[T]he frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party * * *. The frustration must be so severe that it is not fairly to be regarded as within the risks * * * assumed under the contract.

*Id.* Here, the Formaneks would have likely assumed market risks and normal risks connected with the development of property. However, they did not assume the risk

that their property would not be developed because of further Corps involvement. Further, frustration does not mean that the purpose of the contract has become impossible, but rather the purpose must be *"substantially* frustrated." *Id.* at § 265 (emphasis added).

The City also argues that the frustration was caused by the Formaneks because they have not applied for and been denied a permit. However, the frustration was the unexpected action of the Corps requiring further permits. The Formaneks did not cause the Corps to assume discretionary authority over their Project property.

Finally,

[T]he non-occurrence of the frustrating event must have been a basic assumption on which the contract was made. * * * [T]he mere fact that the event was foreseeable does not compel the conclusion that its non-occurrence was not such a basic assumption.

*Id.* at § 265, comment a. Here, both parties testified that they would not have entered the agreement if they had known the Corps might require further permits. The non-occurrence of the Corps taking discretionary authority of the Project was a basic assumption on which the contract was made.

*Attorney Fees*

The awarding of costs, including attorney fees, is at the discretion of the trial court. *Peterson v. City of Elk River*, 312 N.W.2d 243, 246 (Minn.1981). The general rule is that attorney fees are not recoverable unless authorized by statute or contract. *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 53 (Minn.1983). The Formaneks base their claim for attorney fees on misrepresentation or breach of contract. The trial court found neither misrepresentation or breach of contract. The trial court did not abuse its discretion by denying attorney fees.

Affirmed.