*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0760**

August Ventures, LLC, et al.,
Respondents,

vs.

Gedney Foods Company,
Appellant.

**Filed March 18, 2024**
**Affirmed**
**Schmidt, Judge**

Carver County District Court
File No. 10-CV-19-999

Matthew P. Kostolnik, Aaron P. Minster, Moss & Barnett, P.A., Minneapolis, Minnesota (for respondents)

William G. Carpenter, Mark J. Briol, Briol & Benson, PLLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Slieter, Presiding Judge; Wheelock, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

In this breach-of-lease action, appellant-tenant Gedney Foods Company challenges the grant of summary judgment to respondent-landlord August Ventures, LLC, et al. Gedney argues the district court erred in (1) determining that clause 8.1 of the lease—covering what happens in the circumstance of a government taking—was not triggered;

(2) rejecting Gedney's impossibility defense; and (3) rejecting its frustration-of-purpose defense. We affirm.

## FACTS[1]

This dispute arises from the lease of a building located in Chaska, Minnesota (Premises). In 1957, Gedney, a producer of pickles, purchased land and built the Premises. In 1965, Gedney purchased another parcel of land located within the Minnesota River floodplain to construct wastewater treatment ponds (Pond Parcel). The Premises and the Pond Parcel are, and have always been, legally separate and distinct pieces of property.

In 2007, Gedney sold the Premises to a predecessor of August Ventures. The transaction included a sale leaseback, which allowed Gedney to continue operating at the Premises. Gedney retained ownership of the Pond Parcel.

The lease defines the Premises as "approximately 143,211 square feet in the building located at 2100 Stoughton Avenue, Chaska, County of Carver, Minnesota." The lease provided that Gedney could use the Premises for "[f]ood production/processing, office, distribution or warehouse." The lease provided for the termination of the agreement under certain circumstances. Relevant to this appeal, clause 8.1 provides that the lease terminates upon a government taking of the Premises.

> **8.1** SUBSTANTIAL TAKING. If all or a substantial part of the Premises are taken for any public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain or by purchase in lieu thereof, and the taking would prevent or materially interfere with the use of the Premises for the purpose for

---

[1] We recite the facts in the light most favorable to Gedney, as the nonmoving party. *Trebelhorn v. Agrawal*, 905 N.W.2d 237, 241 (Minn. App. 2017).

which it is then being used, this Lease shall terminate and the rent shall be abated during the unexpired portion of this Lease effective on the date physical possession is taken by the condemning authority. Tenant shall have no claim to the condemnation award or proceeds in lieu thereof, except that Tenant shall be entitled to a separate award as provided by applicable law.

In 2007, the parties added an addendum to the lease that recognized Gedney's ownership of, and responsibility for, the Pond Parcel:

7. OFF-SITE PONDING AREA.

(a) The parties hereby acknowledge that Tenant [Gedney] is the fee owner of that certain real property Tenant uses in its operations for ponding purposes and that Tenant operates and maintains various pipes running to and from said property and the Premises (the property and pipes being collectively referred to herein as the "Pond Parcel"). The parties hereby agree that Tenant shall be solely responsible for all costs related to the Pond Parcel, including without limitation the costs of maintenance, repair, taxes, insurance, and compliance with the law and that Tenant shall indemnify, hold harmless, and defend Landlord from and against any claims, damages, penalties, liabilities, and costs (including reasonable attorneys' fees and court costs) related to the Pond Parcel.

The parties amended the lease in 2010, which expanded the Premises by adding approximately 39,120 square feet to the building and extended the lease into 2023. The amendment did not otherwise modify the definition of the Premises.

The Minnesota Pollution Control Agency (MPCA) has issued use permits to Gedney for its Pond Parcel for over forty years. In 2018, the MPCA sent Gedney a Notice of Violation identifying several permit violations, including wastewater from the Pond Parcel reaching the Minnesota River. The Notice of Violation also required Gedney to take

3

corrective actions. During a meeting between Gedney employees and MPCA staff regarding the violations, the MPCA expressed concerns about Gedney's ability to comply with the terms of its permit. Following the meeting, the MPCA wrote to Gedney and "clarif[ied] that the meeting did not set forth any broad policy implications for wastewater facilities permitted by the MPCA." The MPCA noted the meeting was aimed at identifying Gedney's "short-term and long-term plan for the wastewater ponds," including "actions that ensure compliance with Minnesota statutes, rules and permit conditions."

In June 2019, Gedney told the MPCA that it planned on ceasing operations at the Premises. Gedney stopped paying rent to August Ventures in September 2019 and vacated the Premises entirely by October 2019. At the time Gedney vacated the Premises, it was still producing pickles notwithstanding the fact the permit had expired and Gedney had not corrected the violations.

August Ventures sued Gedney, alleging that Gedney breached its lease by failing to pay rent after Gedney abandoned the Premises. August Ventures moved for summary judgment. Gedney opposed the motion, arguing that clause 8.1 of the lease was triggered by MPCA's action, and that the MPCA frustrated the purpose of the lease by making performance impossible. The district court granted August Ventures' motion for summary judgment, determining that Gedney had breached its lease and had no defense for its breach. As a result of the breach, the district court awarded August Ventures $1,459,952.30. The district court later awarded $271,456.30 in attorney fees.

Gedney appeals.

4

**DECISION**

On appeal from summary judgment, we review "the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011). "We review a district court's summary judgment decision de novo." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). We view the evidence "in the light most favorable to the party against whom judgment was granted." *Trebelhorn*, 905 N.W.2d at 241.

## I. The district court properly determined that clause 8.1 of the lease was not triggered.

Gedney argues the district court erred in granting summary judgment because the MPCA's actions related to the Pond Parcel resulted in a substantial taking, which terminated the lease under clause 8.1. We disagree.

As an initial matter, we have serious doubts as to whether a governmental taking had occurred. At the time Gedney vacated the Premises and stopped paying rent, the MPCA had not yet completely prohibited Gedney from using the Pond Parcel for wastewater. The record also contains no evidence that the MPCA demanded that Gedney immediately stop using the Pond Parcel for wastewater. The evidence shows that the MPCA demanded Gedney to submit a short-term plan and a long-term plan for the Pond Parcel that ensured compliance with the law and its permit conditions. The undisputed facts demonstrate that the MPCA would likely—in the future—take actions that would expressly prohibit Gedney's continued use of the Pond Parcel for wastewater. But no such

5

prohibition had yet occurred. The proffered facts present Gedney's belief that a taking would occur, not that an actual taking had occurred. We, nonetheless, consider whether the MPCA's alleged taking of the Pond Parcel terminated the lease under clause 8.1.

Gedney asserts the district court "erroneously determined that the [l]ease defined the word 'Premises' to exclude the Ponds." The purpose of contract interpretation is to determine and effectuate the intent of the parties. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). "Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning." *Id.*

Clause 8.1 provides that the lease "shall terminate" upon a government taking of "all or a substantial part of the Premises[.]" The parties' original lease defined "Premises" as "approximately 143,211 square feet in the building located at 2100 Stoughton Avenue." Shortly after executing the lease, the parties incorporated an addendum in which Gedney agreed to "be solely responsible for all costs related to the Pond Parcel, including without limitation the costs of . . . compliance with the law[.]" Gedney also agreed to "indemnify, hold harmless, and defend [August Ventures] from and against any claims, damages, penalties, liabilities, and costs . . . related to the Pond Parcel." The 2007 addendum did not change the definition of the Premises. The 2010 amendment to the lease redefined the Premises to account for an expansion of the building but did not otherwise modify the definition. The 2010 amendment makes no mention of the Pond Parcel.

The original lease, the 2007 addendum, and the 2010 amendment evince the parties' intent to distinguish the Premises from the Pond Parcel. The district court did not, therefore, err in determining that the definition of the Premises is unambiguous and

6

excludes Gedney's Pond Parcel. Because the lease's definition of the Premises does not include Gedney's Pond Parcel, the district court properly determined that the MPCA's actions with regard to the Pond Parcel—even if it could be considered a "taking"—did not trigger clause 8.1 of the lease. As such, the district court properly granted summary judgment to August Ventures because Gedney breached the lease by failing to pay rent.

## II. The district court properly determined that Gedney's impossibility and frustration-of-purpose affirmative defenses failed.

Gedney argues the district court erred by rejecting Gedney's affirmative defenses of impossibility and frustration of purpose. We are not persuaded.

### A. The district court did not err in rejecting Gedney's impossibility defense.

Gedney argues the district court erred in granting summary judgment, contending the MPCA's actions on the Pond Parcel made it objectively impossible for Gedney to perform its contractual obligations under the lease. The doctrine of impossibility allows a party to be excused from performing under the contract "due to the existence of a fact or circumstance of which the promisor at the time of the making of the contract neither knew nor had reason to know . . . ." *Powers v. Siats*, 70 N.W.2d 344, 348 (Minn. 1955). But difficulty of performance does not excuse a party from its contractual duties. *Id.* at 349.

As reflected in Gedney's history of making pickles at that location, the record shows Gedney knew its use of the Pond Parcel for wastewater was subject to government oversight when it entered the lease. And yet, Gedney assumed "all costs related to the Pond Parcel, including without limitation the costs of . . . compliance with the law" and indemnified August Ventures "against any claims, damages, penalties, liabilities, and costs

7

(including reasonable attorneys' fees and court costs) related to the Pond Parcel." Thus, the district court properly determined that impossibility was not an available defense because Gedney knew its Pond Parcel was subject to government regulation at the time of contracting. *Id.* at 348-49 (noting impossibility applies only when an unforeseeable event renders performance impossible or impracticable).

**B.** **The district court did not err in rejecting Gedney's frustration-of-purpose defense.**

Gedney argues the district court erred in determining that the frustration-of-purpose doctrine does not apply. A party asserting a frustration-of-purpose defense must establish (1) the contract's principal purpose has been frustrated, (2) the frustration was not the party's fault, and (3) the event that frustrated the purpose of the contract was unforeseen at the time the contract was made. *Nat'l Recruiters, Inc. v. Toro Co.*, 343 N.W.2d 704, 707 (Minn. App. 1984). To prevail under the frustration-of-purpose doctrine, the frustration must be substantial. *City of Savage v. Formanek*, 459 N.W.2d 173, 176 (Minn. App. 1990) ("It is not enough that the transaction has become less profitable for the affected party." (quotation marks omitted)), *rev. denied* (Minn. Oct. 25, 1990).

Gedney summarily states that the "purpose in entering the [l]ease was substantially frustrated by the loss of use of its wastewater disposal system due to MPCA's new [p]olicy and its condition that Gedney provide a short-term and long-term plan to stop treating wastewater within the floodplains of the Minnesota River." Gedney fails to acknowledge that the lease specifically provided for permitted uses of the Premises, including "[f]ood production/processing, office, distribution or warehouse." Although Gedney's "[f]ood

production/processing" would eventually need to be altered given the Pond Parcel permit requirements,[2] the lease provided for other permitted uses of the Premises. Because the parties contemplated multiple uses for the Premises at the time they entered into the lease, and because Gedney failed to present an argument explaining why it could not use the Premises for one of the other permitted uses, we are not convinced that the principal purpose of the lease was frustrated. The district court did not err in concluding the purpose of the contract was not frustrated.

Gedney also claims that it was not at fault because the MPCA's actions caused Gedney to stop paying rent. The record, however, shows that the MPCA engaged Gedney to identify plans for the wastewater ponds, including "corrective actions" to ensure compliance with the "statutes, rules and permit conditions." The record also shows that Gedney's issues with the MPCA related to the permit violations, which Gedney took responsibility for in the lease. As the district court properly noted, a party cannot claim frustration of purpose when they are at fault. *Nat'l Recruiters*, 343 N.W.2d at 707.

Finally, Gedney claims the MPCA's actions were unforeseen at the time the parties entered into the lease. But there is no indication that, at the time of contracting, the parties assumed the state's regulatory requirements related to using the Pond Parcel for wastewater would remain the same indefinitely such that the event was unforeseen. The undisputed

---

[2] At the time Gedney stopped paying rent, Gedney could have worked with the MPCA and provided a short- and a long-term plan for its wastewater. It is entirely possible, and perhaps even likely, that the MPCA would require Gedney to stop operating because it no longer had a valid permit. But at the time Gedney stopped paying rent, the MPCA had not yet told Gedney to cease all operations.

facts show that Gedney knew its use of the Pond Parcel was contingent on maintaining a wastewater permit and that the permit could be modified or revoked. Gedney previously had to adjust its operations when the state agency required Gedney to stop dumping wastewater into the river. At that time, the state agency issued a permit that allowed Gedney to use the Pond Parcel for its wastewater. The change in the permit—which required a change in operation—demonstrates Gedney knew full well that the MPCA could amend, modify, or revoke its wastewater permit. As such, the district court did not err in determining that the frustration-of-purpose doctrine did not excuse Gedney's breach.[3]

**Affirmed.**

---

[3] We note that breaching the lease was not Gedney's only option. Gedney could have exercised its rights under clause 3(a) of the addendum, vacated the production portion of the Premises, paid a $100,000 fine, and its rent would have been reduced accordingly. Gedney also could have continued to use the Premises for any of the other permitted uses under the lease, for example, "office, distribution or warehouse."