STATE OF MINNESOTA

IN SUPREME COURT

A22-1057

Court of Appeals                                                          Moore, III, J.
                                                Took no part, Procaccini, Hennesy, J.J.

Fitness International, LLC,

            Appellant,

vs.                                                                   Filed: July 24, 2024
                                                        Office of Appellate Courts

City Center Ventures, LLC,

            Respondent.

_____

John C. Holper, Winthrop & Weinstine, P.A., Minneapolis, Minnesota; and

A. Grant Phelan, Klehr Harrison Harvey Branzburg LLP, Philadelphia, Pennsylvania, for appellant.

John J. Steffenhagen, Brian N. Niemczyk, Hellmuth & Johnson, PLLC, Edina, Minnesota, for respondent.

_____

S Y L L A B U S

1.      The doctrine of temporary frustration of purpose delineated in the Restatement (Second) of Contracts § 269 is a justification for nonperformance of a contract that is recognized under Minnesota law in certain circumstances.

2.      Summary judgment in favor of the landlord was appropriately granted because, even assuming that the doctrine of temporary frustration of purpose may be used

as the basis for a breach-of-contract claim and not only as an affirmative defense, the commercial lease tenant's obligation to perform under the lease agreement was merely suspended during the period of temporary frustration, not discharged.

Affirmed.

## O P I N I O N

MOORE, III, Justice.

This appeal poses the question of whether, under Minnesota law, a commercial lease tenant whose purpose in entering the lease agreement is temporarily frustrated has a cause of action for breach of contract to recover rent paid for the period of temporary frustration. Appellant Fitness International, LLC ("Fitness") entered into a lease agreement with respondent City Center Ventures, LLC ("City Center") for a property owned by City Center. Since the lease began, Fitness has operated a health club and fitness center in a building Fitness constructed on the property. For a period of approximately 3.5 months in 2020, however, Fitness was not legally allowed to operate its health club and fitness center due to executive orders mandating closure of certain non-essential businesses to slow the spread of COVID-19. Fitness sued City Center, seeking recovery of rent paid during the mandatory closure period. Fitness argued that the doctrine of frustration of purpose excused its obligation to pay rent for that time, that City Center's failure to excuse the rent during the closure period was a breach of the lease agreement, and that Fitness was entitled to a refund of the amounts paid to City Center for the closure period. The district court granted City Center's motion for summary judgment, and the court of appeals affirmed.

2

For the reasons stated below, we conclude that summary judgment was appropriately granted in favor of City Center. We recognize that the approaches outlined in the Restatement (Second) of Contracts §§ 265, 269 (Am. L. Inst. 1981), are appropriate frameworks to analyze a claim of permanent or temporary frustration of purpose. We have no need to decide, however, whether this permits temporary frustration of purpose to be used as the basis for a breach-of-contract claim and not only as an affirmative defense. Here, even assuming, without deciding, that Fitness was entitled to pursue a claim of temporary frustration of purpose that, if properly supported, would allow it to recover rent paid during the mandatory COVID-19 closure periods, Fitness has not established that its obligation to pay rent owed for the closure periods was discharged, rather than merely suspended. Accordingly, we affirm the decision of the court of appeals, but on different grounds.

## FACTS

The facts in this case are undisputed. Fitness is a California limited liability company that owns and operates fitness centers throughout the United States and Canada. City Center is a Minnesota limited liability company that owns and leases commercial real estate. In 2007, Fitness and City Center executed a commercial lease agreement for a property owned by City Center in Hopkins. Provisions of the lease agreement relevant to our analysis are as follows.

Article I of the lease agreement provides that Fitness "shall have the right throughout the Term to operate the [property], or any portion thereof, for uses permitted under this Lease." The lease further describes the initially permitted use of the property as

3

"the operation of a health club and fitness facility," which includes ancillary uses such as offering spa or tanning services, selling vitamins or other supplements, and selling apparel and fitness-related accessories. Fitness was required to operate under this initial use for one day. Following the one-day required operating period for the property's initial use, Article VIII of the lease agreement allows Fitness to modify its use of the property "to any alternate legal use." Lastly, Article XXII of the lease agreement contains a force majeure clause.[1] The provision states, in relevant part:

> If either party is delayed or hindered in or prevented from the performance of any act required hereunder because of . . . restrictive laws . . . performance of such act shall be excused for the period of the delay caused by the Force Majeure Event and the period for the performance of such act shall be extended for an equivalent period . . . . Delays or failures to perform resulting from lack of funds or which can be cured by the payment of money shall not be Force Majeure Events.

Fitness paid timely rent and enjoyed full use of the property, pursuant to the lease agreement, from July 2007 until March 2020. Beginning in March 2020, in response to the emergence of the COVID-19 pandemic, Governor Walz used executive orders to close many public spaces to control the spread of the virus. On March 16, 2020, Governor Walz issued Executive Order No. 20-04, mandating closure of non-essential businesses, including gyms and fitness centers. Emerg. Exec. Order No. 20-04, *Providing for Temporary Closure of Bars, Restaurants, and Other Places of Public Accommodation*

---

[1] A "force-majeure clause" is generally defined as "[a] contractual provision allocating the risk of loss if performance becomes impossible or impracticable, esp[ecially] as a result of an event or effect that the parties could not have anticipated or controlled." *Force-Majeure Clause, Black's Law Dictionary* (12th ed. 2024).

4

(Mar. 16, 2020). Following this order, Fitness stopped operating its fitness center and ceased collecting membership fees.

Three months later, Governor Walz issued Executive Order No. 20-74, permitting gyms and fitness centers to re-open to the public if following the State's industry guidelines. Emerg. Exec. Order No. 20-74, *Continuing to Safely Reopen Minnesota's Economy and Ensure Safe Non-Work Activities during the COVID-19 Peacetime Emergency* (June 5, 2020). Fitness then began operating its fitness center again. But following an uptick in COVID-19 cases, Governor Walz issued Executive Order No. 20-99, again mandating closure of gyms and fitness centers from November 20, 2020 to December 18, 2020. Emerg. Exec. Order No. 20-99, *Implementing a Four Week Dial Back on Certain Activities to Slow the Spread of COVID-19* (Nov. 18, 2020). Accordingly, Fitness stopped operating its fitness center during this time.

Fitness's closures of its fitness center in 2020 prompted it to suspend its rent payments. On March 17, 2020, the day after the first emergency executive order affecting it issued, Fitness sent a letter to City Center stating that it believed its obligation to pay rent during the mandatory closure period was excused because the closure, among other things, frustrated the purpose of the lease. Fitness proposed that "[a]ll regularly scheduled rent and other charges due and payable under the Lease . . . will abate from the date of this letter until the earlier of (a) the 30th day after we reopen the club or (b) June 30, 2020." Fitness failed to pay timely rent for April, May, and June of 2020.

In June 2020, City Center provided written notice of default to Fitness, demanded rental payments, and informed Fitness that failure to make payments would result in an

5

eviction action.  Four months later, Fitness paid the overdue rent plus late fees but wrote to City Center that such payments were "paid under protest."  Fitness again failed to pay rent in December 2020.  Three months later, City Center filed an eviction action in Hennepin County District Court, alleging that Fitness had failed to pay all rent due for the month of December.  After Fitness paid the overdue December 2020 rent, City Center dismissed the eviction action.

In April 2021, Fitness filed a complaint in Hennepin County District Court against City Center, seeking to recover the rent and associated late fees it paid under protest during the mandatory closure periods when it could not legally operate its fitness center, totaling $334,922.71.  Fitness's breach-of-contract claim alleged, in part, that payment was excused under the doctrine of frustration of purpose.[2]  According to Fitness, its principal purpose in entering the lease agreement—the operation of a health club and fitness center—was frustrated when executive orders mandated the closure of its business and, therefore, it was not obligated to perform its duties under the lease during the closure periods.  Fitness alleged further that City Center's refusal to abate rent during the closure periods was a breach of contract and sought a declaratory judgment that it was excused from paying rent during the closure periods.  City Center filed an answer and counterclaim, seeking a declaratory judgment that Fitness was not excused from paying rent during the closure periods.

---

[2]    Fitness's complaint did not specifically reference *temporary* frustration of purpose.

6

The district court granted summary judgment in favor of City Center, and the court of appeals affirmed. *Fitness Int'l, LLC v. City Center Ventures, LLC*, No. A22-1057, 2023 WL 2230321, at *1 (Minn. App. Feb. 27, 2023). The court of appeals noted that Fitness cited to no binding authority allowing it to apply the doctrine of frustration of purpose to establish a breach-of-contract claim.[3] *Id.* at *2, 5. The court of appeals declined to extend this legal theory—which is generally used as an affirmative defense—to Fitness's claim. *Id.* at *5. Furthermore, the court of appeals determined that Fitness could not meet the requirements for frustration of purpose because the mandatory COVID-19 closures did not prohibit *all* the permitted uses of the property stated in the lease and thus, did not substantially frustrate the purpose of the lease. *Id.* For these reasons, the court of appeals determined that summary judgment was appropriately granted in favor of City Center.[4] *Id.* at *2.

We granted review to consider the doctrine of frustration of purpose in this context.

---

[3] Because Fitness's complaint asserted frustration of purpose generally, the court of appeals did not distinguish between "permanent" frustration of purpose and temporary frustration of purpose.

[4] The court of appeals made additional determinations relating to (1) whether City Center breached its duties under the lease agreement; (2) whether the doctrines of impossibility or impracticability supported Fitness's claim; and (3) whether City Center owed interest on late renovation contribution payments to Fitness under section 19.7 of the lease agreement. *Fitness Int'l*, 2023 WL 2230321, at *2–3. Because we granted review solely on Fitness's claims relating to the doctrine of frustration of purpose, we do not address these portions of the court of appeals' decision.

## ANALYSIS

The question posed here is whether the court of appeals erred in determining that Fitness could not use the doctrine of frustration of purpose to seek recovery of rent it paid to City Center during the mandatory COVID-19 closure periods. This case comes before us on appeal from the district court's grant of summary judgment in favor of City Center. Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. On appeal, we review de novo a grant of summary judgment by determining whether there are any genuine issues of material fact and whether the district court erred in applying the law to the facts. *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 325–26 (Minn. 2010). We view the evidence in the light most favorable to the non-moving party. *Id.* at 325.

We first address general principles of Minnesota law and the Restatement governing the frustration-of-purpose doctrine, including the doctrine of temporary frustration of purpose. Then we address whether Fitness's obligation to pay rent for the mandatory closure period was excused, such that City Center is required to return the rent payments.

### I.

We turn first to the governing law of the frustration-of-purpose doctrine. Fitness argues the Restatement (Second) of Contracts ("the Restatement") governs this question, and City Center does not argue otherwise. For the reasons stated below, we agree.

As set forth in the Restatement, the doctrine of frustration of purpose excuses performance under a contract in certain situations:

8

Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 265 (Am. L. Inst. 1981). The Restatement approach essentially requires the asserting party to prove three elements: (1) the party's principal purpose in entering the contract is substantially frustrated; (2) without their fault; (3) by the occurrence of an event, the nonoccurrence of which was a basic assumption on which the contract was made. *Id.* A "principal purpose" is one that is "so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." *Id.* at cmt. a. And for a frustration to be "substantial," it must "be so severe that it is not fairly to be regarded as within the risks that [the asserting party] assumed under the contract." *Id.*

The Restatement approach to frustration of purpose has a corollary that governs circumstances where the frustration is only *temporary*. Specifically:

Impracticability of performance or frustration of purpose that is only temporary suspends the obligor's duty to perform while the impracticability or frustration exists but does not discharge his duty or prevent it from arising unless his performance after the cessation of the impracticability or frustration would be materially more burdensome than had there been no impracticability or frustration.

Restatement (Second) of Contracts § 269 (Am. L. Inst. 1981). Notably, temporary frustration of purpose only *suspends* the asserting party's duty, rather than discharging all remaining duties to perform. *Compare id.*, *with* Restatement (Second) of Contracts § 265.

9

Once the frustration has ended, full performance is required unless the "materially more burdensome" standard is met. Restatement (Second) of Contracts § 269 cmt. a.

We have previously applied the Restatement approach to the doctrine of "permanent" frustration of purpose. *See J.J. Brooksbank Co. v. Budget Rent-A-Car Corp.*, 337 N.W.2d 372, 377 (Minn. 1983).[5] In *Brooksbank*, the plaintiff and defendant entered into a licensing agreement for a rental car franchise, which included provisions relating to the defendant's system for allocating car reservations. *Id.* at 373. After the reservation system changed, the plaintiff brought an action to determine the extent of the defendant's obligations under the agreement. *Id.* The defendant argued, in part, that it was excused from performing under the agreement under the doctrine of frustration of purpose. *Id.* at 377. We acknowledged the requirements for frustration of purpose to discharge contractual obligations under the Restatement, but found that the requirements were not met. *Id.*

Before our *Brooksbank* decision, we recognized temporary *impossibility* of performance as a defense to a breach-of-contract claim in the context of a commercial contract in *Village of Minneota v. Fairbanks, Morse & Co.*, 31 N.W.2d 920, 925 (Minn. 1948).[6] In that case, the defendant argued that its obligations under the contract were

---

[5]    Relying on *Brooksbank*, the court of appeals has adopted the Restatement approach as a statement of Minnesota law. *See Little Canada Charity Bingo Hall Ass'n v. Movers Warehouse, Inc.*, 498 N.W.2d 22, 24–25 (Minn. App. 1993) (citing *Brooksbank*, 373 N.W.2d at 377), *rev. denied* (Minn. May 18, 1993).

[6]    The Restatement combines the analysis for temporary impossibility, temporary impracticability, and temporary frustration of purpose and proposes the same remedy for all three doctrines. *See* Restatement (Second) of Contracts § 269. Although we have only addressed Restatement § 269 in the context of temporary impossibility, we conclude that the same principles apply to temporary frustration of purpose.

10

excused because wartime restrictions during World War II made performance temporarily impossible. *Id.* at 921. Under the doctrine of impossibility, the unforeseen exercise of governmental authority rendering performance of a contract impossible will excuse the promisor's obligation in connection with that obligation. *Id.* at 925–26. We recognized that impossibility may be only temporary, and in those cases, performance of a contract will only be excused in unique situations when the asserting party "would have been compelled to render performance substantially different from what it contracted for." *Id.* at 926. We held that the unprecedented wartime restrictions created temporary impossibility of performance, and excused the defendant's performance under the contract. *Id.*

Expanding on that principle, we hold today that the doctrine of temporary frustration of purpose delineated in the Restatement (Second) of Contracts § 269 is a justification for nonperformance of a contract that is recognized under Minnesota law in certain circumstances. The approaches outlined in Restatement (Second) of Contracts §§ 265, 269 are appropriate frameworks to analyze a claim of permanent or temporary frustration of purpose, respectively. Neither of these Restatement sections, however, directly address whether the doctrine of frustration of purpose can be used affirmatively by a *plaintiff* in a claim for breach of contract or whether, consistent with how the doctrine was invoked in *Brooksbank* and *Village of Minneota*, it may only be raised as an affirmative defense. We turn to this next.

11

## II.

With these two frameworks in mind, we turn to the question of whether Minnesota law authorizes Fitness to bring an affirmative claim for breach of contract based on frustration of purpose. If so, and if Fitness is successful on its claim, Fitness could recover the rent it paid to City Center for the mandatory COVID-19 closure periods. City Center argues that the doctrine of frustration of purpose is an affirmative *defense* and does not itself support a cause of action.

### A.

The doctrine of frustration of purpose is generally raised as an affirmative defense, although our court has never had occasion to limit the use of the doctrine to that circumstance. *See City of Savage v. Formanek*, 459 N.W.2d 173, 176 (Minn. App. 1990) (discussing elements for the "*defense* of frustration of purpose to apply" (emphasis added)), *rev. denied* (Minn. Oct. 25, 1990); 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil*, CIVJIG 20.79 (6th ed. 2023) ("Defenses—Frustration."). The court of appeals, relying on its own decision in *Little Canada Charity Bingo Hall Association v. Movers Warehouse, Inc.*, 498 N.W.2d 22, 24–25 (Minn. App. 1993), *rev. denied* (Minn. May 18, 1993), determined that Fitness could not use frustration of purpose to establish its claim because the doctrine is only available as an affirmative defense. *Fitness*, 2023 WL 2230321, at *5. We need not decide whether Minnesota law authorizes Fitness to bring a breach-of-contract claim based on temporary frustration of purpose because, for the reasons stated below, the undisputed facts in the record do not establish such a claim.

12

B.

Assuming without deciding that a party may bring an affirmative claim for breach of contract based on temporary frustration of purpose, we next address whether Fitness has created a genuine issue of material fact, sufficient to withstand summary judgment, on such a claim. Specifically, we address whether Fitness has presented facts that would allow it to prevail on a temporary-frustration-of-purpose claim for recovery of the rent Fitness paid to City Center for the mandatory COVID-19 closure period. We conclude that it has not.

As an initial matter, we recognize that Fitness does not ask to be excused from *all* further performance under the lease. Rather, Fitness argues that its obligation to pay rent only for the mandatory closure periods is excused and asks the court to order City Center to return the previously paid rent for those periods. Fitness has continued to operate its business at the leased property since the mandatory closures ended in December 2020 and does not argue for full discharge of the lease agreement. Because Fitness alleges that its principal purpose in entering into the lease agreement was only temporarily frustrated during the mandatory closure periods, the doctrine of *temporary* frustration of purpose is the applicable analytical framework for Fitness's claim. *See* Restatement (Second) of Contracts § 269.

Even if we were to assume that Fitness satisfied the other requirements of temporary frustration of purpose, it cannot obtain the requested relief—the return of rent payments made for the mandatory closure periods. As discussed previously, under the Restatement approach, the usual remedy for temporary frustration of purpose is temporary *suspension* of contractual obligations, not *discharge* of obligations required during the period of

13

frustration. *Id.* In this context, if a commercial tenant's principal purpose for entering a lease agreement is temporarily frustrated, then its obligation to pay rent is delayed until the frustration ceases. But once the frustrating event ends, the tenant is still required to make any overdue or unpaid rent payments for the period of frustration. Contractual obligations are only discharged if performance would be "materially more burdensome" after the temporary frustration ceases. *Id.*

"Materially more burdensome" performance requires more than inconvenience or increased costs. *Vill. of Minneota*, 31 N.W.2d at 926 (noting that discharge of performance has been allowed "where very greatly increased difficulty had been caused by facts not only unanticipated but inconsistent with the facts that the parties obviously assumed to exist"). For example, in *Village of Minneota*, the defendant in a construction contract was temporarily unable to perform due, in part, to wartime supply restrictions during World War II. *Id.* Wartime restrictions were not lifted until more than five years after the contract was originally signed. *Id.* We held that the unique and severe conditions caused by the war, including unprecedented costs from supply restrictions, allowed for discharge, rather than suspension, of the defendant's obligations under the doctrine of temporary impossibility. *Id.* at 926–27; *see also* Restatement (Second) of Contracts § 269 cmt. a, illus. 1.

Here, Fitness has put forth no specific evidence, and has made no argument, that paying the rent after the closure period would be "materially more burdensome," such that

14

its obligation to pay would be discharged completely.[7] Restatement (Second) of Contracts § 269. Fitness's declarations filed with the district court provide no evidence that, for example, Fitness would suffer financial distress if required to make the disputed rent payments, nor any evidence that Fitness suffered a financial loss that harmed the business's viability. Fitness did not generate revenues from its use of the property during the mandatory closures, but this fact alone is not enough to discharge Fitness's obligation to pay rent. And Fitness has, in fact, already paid rent for the closure periods, showing that it is entirely able to fulfill its contractual obligations.[8] Fitness's obligation to pay rent for the closure period was merely delayed by the temporary frustration.[9] Once the temporary

---

[7] Additionally, Restatement (Second) of Contracts § 269 cmt. a, states that "[i]n applying the standard of materiality, a court will consider whether the delay has seriously upset the allocation of risks under the agreement of the parties." Here, Article XXII of the lease agreement negotiated by Fitness and City Center contains a force majeure clause that specifically contemplates the risk of "restrictive laws" affecting the contract and allocates that risk to the parties accordingly.

[8] By Fitness's own admission, in a declaration filed in support of Fitness's motion for summary judgment by its Director of Lease Administration, it "is not claiming 'financial inability' to pay [r]ent."

[9] Other jurisdictions have reached the same conclusion under similar facts. For example, in *Inland Commercial Real Estate Services, LLC v. ASA EWC, LLC*, 213 N.E.3d 604, 607–09 (Mass. Ct. App. 2023), the Massachusetts Court of Appeals considered an argument by a commercial tenant that its purpose in entering a lease agreement was temporarily frustrated by COVID-related mandatory business closures. After noting that the asserting party did not "seek to be excused from further performance" and "continued to operate its business at the [leased] premises once the COVID-19 restrictions were lifted," the court found that temporary frustration of purpose was inapplicable to the disputed commercial lease because the remedy provided for by the Restatement would not authorize the tenant to have their obligation to pay rent during the mandatory closure period fully *discharged*. *Id.* at 609; *cf. Vereit Real Est., LP v. Fitness Int'l, LLC*, 529 P.3d 83, 90 (Ariz. Ct. App. 2023) (finding tenant's temporary-frustration-of-purpose argument waived by

frustration caused by the mandatory closures ended and Fitness was allowed to legally operate its health club and fitness center on the property, *all* rent payments became due.

On these facts, Fitness's obligation to pay rent for the alleged period of temporary frustration—approximately March to June 2020 and November to December 2020—is not discharged. As a result, Fitness is not entitled to return of the rent payments made to City Center for the mandatory closure periods. Because the undisputed facts conclusively show that Fitness is not entitled to the requested relief, the district court did not err in granting summary judgment in favor of City Center.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals, but on different grounds.

Affirmed.

PROCACCINI, J., took no part in the consideration or decision of this case.

HENNESY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

noting unobjected-to conclusion from the district court that tenant's obligation to pay rent during temporary frustration would be suspended, not discharged).